[No. 12066. In Bank. — May 3, 1890.]

G. M. SACRY, ASSIGNEE, ETC., APPELLANT, v. DAVID LOBREE, RESPONDENT.

INSOLVENCY — DEFINITION — ABILITY OF MERCHANT TO PAY DEBTS — PREFERENCE OF CREDITOR — ACTION BY ASSIGNEE. — A debtor is not insolvent, within the meaning of the insolvent law of this state, if he has sufficient means or resources of any kind to enable him to pay all of his debts as they become due in the ordinary course of business, though he may not have sufficient money in hand or in bank to meet them, or to pay a particular debt in money when due; and a finding, in an action by the assignee of an insolvent merchant against a preferred creditor to recover property transferred in payment of the debt to such creditor, that, at the time of the conveyance and transfer to the creditor of such property, the debtor was not insolvent or unable to pay his just debts, will be sustained, if the evidence shows that the merchant then had property enough to enable him to pay all of his debts, and that he intended to pay them all, and did not contemplate insolvency, though he was then under attachment for a small amount, and had not money on hand sufficient to pay all of his creditors whose claims were due at that time. (BEATTY, C. J., and THORNTON, J., dissenting.)

APPEAL from an order of the Superior Court of Lake County denying a new trial.

The facts are stated in the opinion.

*J. H. Shankland,* and *Benjamin P. Tabor,* for Appellant.

A trader is insolvent when he is at present unable to pay debts which are due in the ordinary course of business, though his inability be not so great as to compel him to stop business. (*Bell* v. *Ellis,* 33 Cal. 625; *Toof* v. *Martin,* 13 Wall. 40; *Wager* v. *Hall,* 16 Wall. 599; *Vennard* v. *McConnell,* 11 Allen, 555; *Thompson* v. *Thompson,* 4 Cush. 134; *Barnard* v. *Crosby,* 6 Allen, 331.)

*Eugene W. Britt,* and *F. E. Johnston,* for Respondent.

The testimony shows that Lobree was solvent, and that the transfer was not made in contemplation of insolvency.

BELCHER, C. C.— Action to recover certain real and personal property, alleged to have been transferred by an insolvent debtor to defendant, in violation of the provisions of the insolvent act.

The complaint states, in substance, that on the thirtieth day of April, 1886, certain creditors of one Leon Lobree filed a petition in the superior court of Lake County, wherein they averred that he had permitted his property to remain under attachment for four days, and was insolvent; that on the 18th of May, 1886, Lobree was, by an order of the court, adjudged an insolvent debtor, and thereafter the plaintiff was duly appointed assignee of his estate; that on the 12th of April, 1886, and for some years prior thereto, Lobree had been carrying on business as a merchant at the town of Middletown, in Lake County, and was then insolvent and unable to pay his debts; that on the said 12th of April, Lobree conveyed to defendant certain real property, and assigned to him certain books, notes, papers, and accounts; that the conveyance and assignment were made, received, and accepted, with a view to pay defendant before and in preference to all other creditors, and to prevent the assets

of Lobree from coming to the possession of his assignee and being ratably distributed among his creditors; and that defendant had at that time reasonable cause to believe that Lobree was insolvent; that the value of the real property was five hundred dollars or thereabouts, and the value of the personal property two thousand dollars or thereabouts, and that defendant had collected upon the accounts a sum exceeding three hundred dollars.

The answer denies that at the time the conveyance and assignment were made Lobree was insolvent or unable to pay his debts; denies that defendant, when he received and accepted the conveyance and assignment, had reasonable cause, or any cause, to believe, or did believe, that Lobree was insolvent or unable to pay his debts; denies that the conveyance and assignment were made, received, or accepted with a view to pay defendant in preference to all or any other creditors of Lobree, or with any view or design to prevent the assets of Lobree from coming to the possession of his assignee, or being ratably distributed among his creditors, or with any intent to hinder, impede, delay, or defeat the object or due operation of the insolvent act.

The court below found the facts to be as follows:—

"1. That on the twelfth day of April, 1886, the said Leon Lobree was justly and legally indebted to said defendant in the sum of two thousand five hundred dollars, as evidenced by his promissory note then held by said defendant for that amount; that said note included, as part of the sum due thereon, and not otherwise secured, the purchase price of the lot of land described in plaintiff's complaint, and which was conveyed by defendant to said Leon Lobree, January 28, 1882, for the agreed consideration of six hundred dollars; that on said twelfth day of April, 1886, said Lobree conveyed the said lot of land and also transferred all his outstanding mercantile book-accounts to the said defendant in satisfaction of the said promissory note, which defendant thereupon surren-

dered to him, said Lobree; that such conveyance of the said land and the tansfer of said book-accounts constitutes the whole of the transactions complained of by plaintiff in this action.

"2. That at the time of such conveyance and transfer the said Leon Lobree was not insolvent or unable to pay his just debts; that said defendant did not then have reasonable cause to believe, and did not in fact believe, that said Lobree was insolvent or unable to pay his debts; that such conveyance and transfer were not made by said Lobree in contemplation of insolvency, nor with a view to pay defendant in preference to his other creditors, nor with any design to prevent his assets from coming to the possession of the assignee, or of being ratably distributed among his creditors, nor with any intent to impede or delay or defeat the object of the act of the legislature of this state, entitled 'An act for the relief of insolvent debtors,' or any other statute or law.

"3. That defendant did not take, receive, or agree to said conveyance and transfer with any view to obtaining payment of his demand against said Lobree in preference to other creditors of the latter, nor with any view to prevent the assets of said Lobree from coming to the possession of the assignee or being distributed ratably among his creditors, or with any intent to defeat or impede or at all interfere with the object or due operation of the insolvent act aforesaid, or any other law.

"4. That said conveyance and transfer were made by said Lobree and received by defendant in good faith to discharge the said promissory note, and not with any intent to give or receive any fraudulent preference, or to defraud any other creditor of said Lobree.

"5. That said defendant has collected upon said book-accounts the sum of $350, and no more; but that neither the estate of said insolvent, nor the plaintiff as assignee thereof, has any interest in the amount so collected or received by defendant."

Upon the findings, judgment was entered that the plaintiff take nothing. A motion for a new trial was then made and denied, and thereupon plaintiff appealed from the order.

It is contended for appellant that the findings were not justified by the evidence, and that a new trial should therefore be granted.

The first question to be determined is, Was Lobree shown to be insolvent, or in contemplation of insolvency, when he made the transfers complained of? At the trial no evidence was introduced by the plaintiff showing or tending to show that Lobree was insolvent or in contemplation of insolvency when the transfers were made; but to establish the fact, he appears to have relied then, and his counsel rely now, entirely upon the testimony given by Lobree himself when called as a witness for defendant. The material parts of that testimony are as follows: "I am the person who made the conveyance and assignment to the defendant on April 12, 1886. I was in the mercantile business at the time, and had no intention of going into insolvency. Within a month before this I had paid on account of my debts $1,109.70 to different creditors in varying amounts. . . . . On the 12th of April I was doing business in the usual way, buying and selling. I did not intend to go into insolvency. I did not want to. I considered I was solvent. I was carrying about six thousand or seven thousand dollars stock beside the book-accounts. No creditors had at that time intimated to me the intention of petitioning the court to declare me an insolvent. I had not the least intimation or suspicion of such a thing. I was indebted to Lobree on the 12th of April to the amount of two thousand five hundred dollars on a note with interest from 1883. . . . . Only a portion of my property was attached. The attachments were for one hundred and fifty dollars, I think, —one for eighty dollars and one for sixty dollars. I had no intention of preventing my

property from going into the hands of an assignee. Lobree came to me, and told me I was attached, and he wanted security for his debt, and I secured him with whatever I had. I had no more money. The last I had I sent to Crawford & Tabor,—eighty dollars,—on same day said attachments were levied. I might have had fifteen or twenty dollars. I think the account of Murphy, Grant & Co., held by Crawford & Tabor, was $160. I was owing them at the time. Their debt was then due. I could have paid them in a few days. I was not able then to pay it. I can't say whether I owed any other creditors whom I was unable to pay as their accounts became due, or not. . . . . I did not pay my bills as they became due, because I did not have the money. I had no bank account. I was attached at 9:30 o'clock Saturday night, and I made the assignment and conveyance to Lobree about eight o'clock Monday morning. The keeper was in charge then of those goods that had been attached. At the time I made the assignment and conveyance I did not know that I was owing more money than I could pay, but I knew that I could not pay all at once what I owed then. There was more money due my creditors then than I could have paid if they had demanded immediate payment. I did not have money enough in my hands to pay my debts as they became due. I had merchandise. Only one side of the store was attached, . . . . I had property enough to pay everybody, and I wanted to pay everybody. I did not have money enough at the time to pay them. I had made no proposition to my creditors for a settlement."

It is claimed that this testimony shows "a clear and distinct confession of insolvency," but we do not think that this claim can be maintained.

It has been held, under the United States bankrupt act, that a trader is insolvent when he is unable to pay his debts as they became due in the ordinary course of business. (*Toof* v. *Martin*, 18 Wall. 40; *Wager* v. *Hall*,

16 Wall. 599.) In the case first cited, the district judge had ruled that "if the bankrupts could not pay their debts in the ordinary course of business, that is, in money, as they fell due, they were insolvent." Speaking of this, the supreme court, by Mr. Justice Field, said:—

"The rule thus laid down may not be strictly correct as applied to all bankrupts. The term ' insolvency ' is not always used in the same sense. It is sometimes used to denote the insufficiency of the entire property and assets of an individual to pay his debts. This is its general and popular meaning. But it is also used, in a more restricted sense, to express the inability of a party to pay his debts as they become due in the ordinary course of business. It is in this latter sense that the term is used when traders and merchants are said to be insolvent; and as applied to them, it is the sense intended by the act of Congress. It was of the bankrupts as traders that the district judge was speaking when he used the language which is the subject of criticism by counsel. With reference to other persons not engaged in trade or commerce, the term may, perhaps, have a less restricted meaning. The bankrupt act does not define what shall constitute insolvency, or the evidence of insolvency, in every case."

It was further said: "In the present case the bankrupts were insolvent in both senses of the term at the time the conveyances in controversy were made."

In Bump's Law and Practice of Bankruptcy, fifth edition, page 469, it is said: "Perhaps no precise rule can be laid down which will be applicable to all cases, inasmuch as the determination of each case rests largely upon its own peculiar facts. It is generally held by the bankrupt courts that a trader who is not able to pay all his debts in the usual and ordinary course of business, as persons carrying on trade usually do, is insolvent, within the meaning of the bankrupt law, and there is no better

general rule to govern courts when they are considering
the facts of a case.   It is neither too broad nor too nar-
row, while it would be quite too narrow and restricted to
hold that failure to pay some one debt when due is evi-
dence of insolvency in all cases under the act.   Whether
a single instance of non-payment of a debt at maturity
would be evidence in a given case of insolvency depends
somewhat upon the magnitude of the debt, the locality
of the debtor, and what is the ordinary course of busi-
ness and custom, in that respect, of the locality where the
debtor resides, and upon such other facts and circum-
stances as bear upon the question of insolvency. . . . . .
The question is, whether the debtor or trader is able to
pay his debts in the ordinary course as persons carrying
on trade there usually do.   Hence it may be, and un-
doubtedly is, true that insolvency in commercial centers
is not insolvency in small country towns.   In the former
places, if the debtor's paper is dishonored, his credit is
gone, and he is *prima facie* insolvent; whereas, in the
latter localities, it is not so.   Insolvency is a fact, and not
a matter of definition or rule of law; and what is evi-
dence of insolvency in London or Paris or New York is
not evidence of insolvency everywhere."   (Citing cases.)

The insolvent act of this state provides that a debtor
may be put into involuntary insolvency if he, "being
insolvent, has suffered his property to remain under at-
tachment or legal process for four days" (sec. 8), but it
nowhere defines what shall constitute insolvency.   The
Civil Code, however, in the title in regard to assign-
ments for the benefit of creditors (sec. 3450), says: "A
debtor is insolvent, within the meaning of this title,
when he is unable to pay his debts from his own means
as they become due."   And it has been held that this is
the correct definition of insolvency under the insolvent
act of 1880.   (*Washburn* v. *Huntington*, 78 Cal. 573.)

What is meant by the words "from his own means"?
The definition of the word "means," as given by Webster,

is, "resources or income." But "resources" does not necessarily mean money in hand. A debtor may have ample *resources* to pay all his debts as they become due, and yet have no money in his pocket or in bank. Is such a debtor insolvent? Suppose a wheat-buyer should have a thousand tons of wheat in a warehouse, worth twenty-five thousand dollars, which he is holding for better prices, and is indebted in the sum of a thousand dollars. Is he insolvent unless he sells the wheat at whatever price he can get, and pays the debt as it becomes due? We do not think he is, under the insolvent law of this state.

In *Bell* v. *Ellis*, 33 Cal. 620, it was held that a trader is insolvent when he is not in a condition to meet his engagements, or to pay his debts in the usual and ordinary course of business; but he is not so merely because his assets, at a given date, may not satisfy all the demands against him due and to become due. The court said: "The test question is not, Will his effects realize enough to pay his debts due and to become due? but, Are his affairs in such a condition as to enable him, in the usual and ordinary course of his business, to make his payments as they fall due? and the question is to be answered by the jury in view of all the circumstances affecting the business of the trader, including the value of his effects, the extent and character of his business, the manner in which it was being conducted, whether upon a speculative or legitimate and safe basis, the amount of his profits, the extent of his liabilities, whether kept within a safe limit, and generally his credit, accompanied by the benefit or advantage which he has, outside of the mere value of his property and the debts due him, arising from the good-will of the business."

In the light of the authorities, we cannot say, therefore, that the finding "that at the time of such conveyance and transfer the said Leon Lobree was not insolvent or unable to pay his just debts" was contrary to and not

justified by the evidence. This being so, it is unnecessary to consider the other findings complained of.

We advise that the order be affirmed.

Hayne, C., and Foote, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the order is affirmed.

Beatty, C. J., and Thornton, J., dissented.