[Civ. No. 22456. Second Dist., Div. Two. Nov. 12, 1957.]

MORGAN S. STARK et al., Respondents, v. HAROLD L. SHAW et al., Defendants; SHAW CONSTRUCTION COMPANY (a Corporation), Appellant.

Hindin & Susman, Maurice J. Hindin, Benjamin L. Susman and Edwin J. Regan for Appellant.

Murchison & Cumming for Respondents.

FOX, Acting P. J.—This is an action for damages for breach of contract. From a judgment in favor of plaintiffs, defendant Shaw Construction Company has appealed.

In 1952 the Shaw Construction Company began the development of certain tracts in a subdivision in the eastern portion of Los Angeles County known as La Mirada. The program contemplated building 10,000 homes over a four-year period. One of the first units developed by the company consisted of

312 homes. A contract for roofing these houses was let in June, 1953 to La Mirada Roofing Company, which was a family corporation organized in February, 1953 by Morgan S. Stark for this specific purpose. An appropriate license was granted the roofing company. Mr. Stark had been engaged in the roofing business for some 25 years and had a license therefor. He had been roofing houses for the Shaw Company for several years. More recently, he had been engaged in the business in partnership with his wife under the firm name of Morgan S. Stark Company. Neither the partnership nor Mrs. Stark had a roofing contractor's license.

Early in March, 1954, before the roofing of the 312 homes had been fully completed, Mr. Shaw, president of defendant corporation, requested Stark to submit a bid for roofing 936 houses he planned to build immediately on four other tracts in La Mirada. Pursuant to this request, Stark, on March 12, submitted a bid which totaled approximately $355,000. It was accepted by Mr. Shaw on behalf of the corporation that same day. It was out of this contract[1] that this lawsuit arises. The contract did not specify a date on which defendant would start building the houses or on which the roofing would begin.

---

[1] The contract reads as follows:

"March 12, 1954

Shaw Construction Co.
650 South Spring St.
Los Angeles 14, California
Gentlemen:

We respectfully submit the following bid for roofing on Tracts 19041 and 1818—186 units. 18976—475 units. 15930, 275 units. La Mirada, California.

Apply No. 1 5/2-16" red cedar shingles 5" exposure. Double eaves. Boston type hips and ridges. All work to be done in accordance with F.H.A., V.A. and County requirements.

3 Bedroom houses, Plans 1 and 2, 8 elevations.
Average price $360.63 each.

4 Bedroom houses, Plans 3 and 4, 10 elevations.
Average price $398.69 each.

These quotations are based on No. 1 R.C. Shingles at $8.75 per square, f.o.b. mill, plus freight and freight tax. Labor at today's scale, plus insurance, etc. In the event of an increase or decrease in labor or material costs, the above prices are subject to revision.

Yours very truly
LA MIRADA ROOFING CO.
By Morgan S. Stark

State Contr. Lic. 137436
Workmen's Comp. 63917

March 12, 1954

Accepted: Shaw Construction Co.

By:        Harold L. Shaw."

Shaw, however, represented that construction would begin in less than three weeks (approximately April 1st) and proceed at approximately 10 houses per day. It required about three weeks from the time a house was started until it was ready for roofing. At the time this contract was entered into Shaw advised Stark that the financing for his building venture had been arranged with a large and well-known financial institution operating in Southern California. At that time Tracts 18976 and 19041 had been graded both as to streets and as to lots. In Tract 15930 the streets and some of the lots were graded and temporary water was available. Water was also available in Tract 18976, on which were located more than half of the building sites here involved. No foundations, however, had been dug or poured.

Nothing having been done toward starting construction, Stark contacted Shaw during the last week in March and made specific inquiry as to a starting date. Shaw stated construction would begin in "approximately 15 days, not later than the 15th of April." Early in April Shaw told Stark he had been delayed but he expected to start in two or three weeks. In the latter part of April Stark had another conversation with Shaw respecting a starting date. The latter stated he would be starting "very shortly."

Early in May Stark and Shaw had a lengthy discussion concerning the entire situation. Stark told him that he was "getting pretty tired of this situation"; that he "had been living on promises since January of 1953, and something was going to have to be done about it"; that he "had been put to tremendous expenses—that it was on his [Shaw's] say-so, that he said he was going to build the houses, and the work had not proceeded"; that he (Stark) was "in serious financial difficulty"; and he wanted to know what Shaw was going to do. Shaw then reiterated that construction would start soon, and he promised to have some money for Stark on May 17 for the latter to apply on the expenses which had been incurred. On that date no money was forthcoming and no construction had been started. Hence, on May 24, plaintiffs, as assignees of the roofing company, commenced this lawsuit on the theory that defendant's continued failure to commence construction of the houses constituted a breach of contract.

Defendant's first contention is that there is insufficient evidence to support the court's finding that "a reasonable time for performance of the agreement had expired on May 17, 1954." "If no time is specified for the performance of an act

required to be performed, a reasonable time is allowed.'' (Civ. Code, § 1657.) ▮ Since the contract between the roofing company and defendant specified no time for commencing performance of the latter's promises, a reasonable time is implied. In order for the roofing company to perform its part of the contract, it was necessary for defendant to construct the houses; the very nature of the contract gives rise to an implied promise on defendant's part so to do. Defendant's unexcused failure to commence construction within the required time would constitute a breach of contract, which excuses the other party and permits him to recover for any loss occasioned by the breach. (*Sobelman* v. *Maier*, 203 Cal. 1, 9 [262 P. 1087] ; *Fountain* v. *Semi-Tropic Land & Water Co.*, 99 Cal. 677, 680-681 [34 P. 497] ; *Eubanks* v. *Milton G. Cooper & Son, Inc.*, 68 Cal.App.2d 366, 372 [156 P.2d 775].)

▮ The question of what constitutes a reasonable time is always a fact question. (*Lyon* v. *Goss*, 19 Cal.2d 659, 673 [123 P.2d 11] ; *Leiter* v. *Handelsman*, 125 Cal.App.2d 243, 251 [270 P.2d 563].) In determining what period of time would be reasonable, the situation of the parties, the nature of the transaction, and the facts of the particular case should all be considered. (*Lyon* v. *Goss, supra,* p. 673; *Kersch* v. *Taber*, 67 Cal.App.2d 499, 506 [154 P.2d 934].)

▮ Shaw's representation at the time the contract was entered into that construction would start on approximately April 1st; the statement that the financing for the project had been arranged; the fact that the streets had been graded, water provided, and the sites for more than half of the houses had been graded; the vastness of the entire project and the time schedule for its completion; the investment that was already necessarily involved; the desirability of putting the houses on the market so that they could be sold expeditiously at a profitable figure while there was a public demand for housing: all these circumstances reasonably support an inference that the parties contemplated that construction would start *promptly*. With this factual setting the arbiter of the facts could properly conclude that a reasonable time for starting construction expired on May 17th which was more than two months after the contract was made.[2]

---

[2]When the sufficiency of the evidence to support a finding is challenged an appellate court must view the evidence and the reasonable inferences therefrom in the light most favorable to the respondent. (*New* v. *New,* 148 Cal.App.2d 372, 383 [306 P.2d 987].)

There is no merit in defendant's argument that the roofing company (1) acquiesced in the delays, and (2) made no demand that defendant start construction. The evidence discloses that Stark, on behalf of the roofing company, was constantly making inquiry concerning a starting date and was persistent in seeking the commencement of construction. He was helpless to do more. The roofing company cannot therefore be charged with acquiescence. Furthermore, the lengthy conference early in May between Shaw and Stark clearly indicated a demand on the part of the latter that the project get under way immediately.

Defendant's second contention is that "there is insufficient evidence to support the court's implied finding that nonperformance by the defendant as of May 17, 1954, constituted a breach of the agreement by the defendant." This contention has no merit in view of our determination that the trial court properly found a reasonable time for defendant to start construction had expired by May 17th. Such failure clearly constituted a breach of the contract. (*Sobelman* v. *Maier*, *supra*; *Fountain* v. *Semi-Tropic Land & Water Co.*, *supra*.)

Defendant's third contention is that the evidence is insufficent to support the court's finding that the roofing company was ready and able to perform its part of the agreement. Initially it should be noted that approximately three weeks was required after commencing construction of a house before it was ready for roofing. It is conceded that no construction had been started by May 17th. Consequently the roofing company's duty to begin performance never arose. Nevertheless, the roofing company had approximately a car load of shingles on hand that were available for use in the performance of this contract. Furthermore, the company had obtained a commitment for the additional shingles necessary to complete the job. Stark testified that the roofing company had men, machinery and equipment available to it for this venture. Any extra supervisory or clerical help could readily be obtained. In view of Stark's 25 years' experience in the roofing business it is a reasonable inference that he could work out such problems as to equipment and personnel as might arise.

Defendant emphasizes the roofing company's poor financial condition at the time of, and immediately following, the execution of the contract. The roofing company had available labor, equipment, and facilities to go forward with its

contract; it had some shingles on hand and a commitment for the purchase of such additional shingles as would be required to complete the project; it had a firm contract with a responsible subdivider and builder to roof 936 homes for approximately $355,000; it was familiar with this particular type of operation in this locale since it was just completing a large roofing contract for defendant in the La Mirada development; it had a man of long and extensive experience in the roofing business in charge of its operations who was familiar with credit and financing practices in the industry; it is a matter of common knowledge that numerous financal institutions were then available to provide funds to finance sound home building projects. From these facts and circumstances the trial court reasonably could draw the inference that the roofing company would be able to arrange the financing for this undertaking. To reach defendant's conclusion on this aspect of the case would require us to draw inferences contrary to those drawn by the trial court; this, of course, we are not permitted to do.

Defendant's next contention is that the roofing company "was itself guilty of a prior and continuing breach of the agreement by reason of its insolvency." In making this contention defendant points out that the liabilities of the roofing company exceeded its assets. It therefore assumes that the roofing company was insolvent. In so doing defendant has failed to appreciate the appropriate definition of insolvency. "Two distinct and well-defined meanings of the word have been generally recognized, depending upon the nature of the circumstances and the purposes for which it is used. . . . In some situations insolvency refers to an excess of liabilities over assets [citations]; whereas in others it refers to inability to meet one's obligations as they mature in the ordinary course of business [citations]. The latter meaning has been widely followed in the absence of controlling statutory definition [citations], especially where applied to persons engaged in commercial pursuits [citations]." (*People* v. *Biscailuz*, 95 Cal.App.2d 635, 637-638 [213 P.2d 753].) A long line of cases in this state has applied this latter meaning in connection with commercial ventures. (*Bell* v. *Ellis*, 33 Cal. 620, 625; *Sacry* v. *Lobree*, 84 Cal. 41, 47 [23 P. 1088]; *Dixon Lumber Co.* v. *Peacock*, 217 Cal. 415, 421 [19 P.2d 233].) At the time the contract in question was signed the roofing company was in active business and was in fact in the process of

completing a large roofing contract for defendant in this subdivision. Upon the execution of the contract of March 12, which carried with it a substantial potential profit, the roofing company acquired an additional valuable asset not reflected in the balance sheet. Prior transactions indicate that this contract could have been used to raise money (if needed) to meet the company's obligations as they occurred. Therefore, under the applicable definition above noted it does not appear that the roofing company was insolvent.

Defendant's fifth and sixth contentions relate to the sufficiency of the evidence to establish that by the performance of the contract the roofing company would have made a profit and the amount thereof. Defendant's first approach is that plaintiffs failed to establish with certainty that the roofing company would have made any profit at all had the agreement been performed. Defendant then takes the position that, in any event, the evidence is insufficient to support a finding that the roofing company was damaged "in any reasonably ascertainable amount" by reason of defendant's breach of the contract.

"A party to a contract is entitled to recover against the other party who violated it, damages for the profits he would have made out of it had it been performed. It is no objection to their recovery that they cannot be directly and absolutely proved. In the nature of things, the defendant having prevented such profits, direct and absolute proof is impossible." (*McConnell* v. *Corona City Water Co.*, 149 Cal. 60, 66 [85 P. 929, 8 L.R.A.N.S. 1171] ; see Civ. Code, § 3300; *Buxbom* v. *Smith*, 23 Cal.2d 535, 541 [145 P.2d 305].) Because it is difficult to measure with mathematical exactitude the detriment suffered in cases of this character, "it is frequently held that a reasonable certainty only is required." (*Hensler* v. *City of Los Angeles*, 124 Cal.App.2d 71, 88 [268 P.2d 12].) In such cases the injured party is entitled to recover damages for the profits he would have made "by showing how much less than the contract price it will cost to do the work or perform the contract." (*McConnell* v. *Corona City Water Co., supra.*)

By reason of the figures in the contract (see footnote 1) it was not difficult to determine the amount of money that would be due the roofing company upon full performance by it. The major cost items in performing the contract were the shingles and labor. The cost of the shingles was figured at "$8.75 per square, f.o.b. mill," to which was added "freight

and freight tax." Labor was figured "at today's scale, plus insurance, etc." The amount of time required to apply a square of shingles was fairly definitely established. Hence the approximate labor cost per unit or per house was readily ascertainable. To protect against changes in prices of shingles or in the wage scale, the contract provided that "In the event of an increase or decrease in labor or material costs,[3] the above prices are subject to revision." It is thus apparent that the two principal items of cost to the roofing company in the performance of its contract could be quite definitely calculated and that its compensation would be accordingly revised in the event of changes in either labor or material costs. Thus these two major items of expense were relatively well stabilized. It will be noted that freight charges and insurance were taken into account in making the contract. The amount of these items could be determined with substantial certainty.

The roofing company had storage facilities nearby for the shingles, and by reason of its operations in the La Mirada project was familiar with local conditions. The court took into consideration the need for equipment, the likely need for additional supervisory help on the job and clerical help in the office, and other incidental expenses.

It is apparent that the court had before it all the items of expense likely to be incurred in the performance of the contract. Thus, the court could determine with reasonable certainty the roofing company's costs under the contract. The court was then in a position to ascertain the *fact* of a profit and the amount thereof. Examination of the record indicates there is ample evidence to support the trial court's finding as to the amount of damages.

Defendant vainly argues that the roofing company is not entitled to recover damages for loss of profits because its past operations do not afford a basis from which anticipated future profits may be ascertained. This theory is not here applicable. The problem is not whether the roofing company has made profits in the past, or whether, as a business, it will produce profits in the future; rather, the issue to be determined is whether the company was reasonably certain to make a profit under *this particular contract*.

In light of defendant's argument that the roofing company was not able to carry out this contract, it now

[3]The trial court found that the *actual* price of shingles was $8.50 per square and used that figure in fixing damages.

suggests that the contract was to be performed jointly with the Morgan S. Stark Company, thus violating the Contractors' License Law. The roofing company had a license while the Stark Company did not. It is true that when a licensed contractor undertakes to perform a contract jointly with an unlicensed person or entity, no recovery is permitted. (*Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141 [308 P.2d 713]; *Loving & Evans* v. *Blick,* 33 Cal.2d 603 [204 P.2d 23].) But there is no evidence in this case which shows that joint performance was contemplated. The roofing company was formed for the express purpose of roofing the houses to be built in the La Mirada development; defendant had full knowledge of this fact. Defendant's agreement was solely with the roofing company. The fact that Stark and his partnership cooperated with the roofing company and that Stark himself operated it is of no consequence, since the contract was made by the corporate entity and performance by it was contemplated by all concerned.

Defendant's eighth contention is that the trial court made certain contradictory findings and failed to make findings on a material issue. The first alleged inconsistency is based on the fact that one finding states that on May 21, 1954, the La Mirada Roofing Company assigned its rights under the contract to Morgan S. Stark Company, while other findings recite that after commencement of this action the Stark Company made certain assignments of this claim to others. Patently there is no inconsistency in these findings; they merely explain the course of events which the court found to have taken place. In this regard defendant also argues that if these findings are true, then it should have been permitted to bring the assignees before the court because they, rather than plaintiffs, were the real parties in interest. In other words, defendant asserts that plaintiffs could no longer maintain this action once they ceased to be the owners of the claim sued upon. But defendant overlooks Code of Civil Procedure, section 385. Under that statute an assignee of an interest in a pending action has the option of being substituted in the action or continuing it in the name of his assignor. (*Davis* v. *Rudolph,* 80 Cal.App.2d 397, 401 [181 P.2d 765].) Where no such substitution was sought by the assignee, the action was properly continued in the name of the original parties.

Defendant also asserts that there is another contradiction in the findings: one finding recognizes an assign-

ment by plaintiffs of all their right, title and interest under the claim sued upon to Asphalt Products Company on June 18, 1954; another finding states that on September 12, 1955, plaintiffs executed an assignment for the benefit of creditors to Claude B. Cumming, one of plaintiffs' attorneys in this action. There is obviously nothing contradictory about these findings; they, like the findings mentioned above, merely recite the events that occurred.     Since the court did not find which assignment took precedence, defendant argues that the trial court failed to make a finding on a material issue. This was not a material issue, and in any event, defendant could suffer no prejudice by failure to find on this question, since the second assignee obviously had notice of the prior assignment and concedes that the prior assignment prevails.

   Defendant's final contention is that the court erred in excluding certain evidence and in unduly restricting cross-examination of Stark. The evidence in controversy related to the operations of the Morgan S. Stark Company and was for the purpose of showing that even if that company's figures were used instead of the La Mirada Roofing Company's figures, no future profits could be anticipated. This evidence was irrelevant since, as pointed out previously, the decisive issue was the reasonable certainty of a profit under this particular contract; the Stark Company's past profits and losses were of no consequence. Hence, the evidence was properly excluded.

   Defendant was not unduly limited in its cross-examination of Stark. The rejected questions related principally to: (1) the cost and type of shingles used in performing the roofing company's prior contract with defendant; and (2) whether the roofing company made a profit from such contract. The questions in the first group were irrelevant because the contract of March 12 covered both the cost and type of shingles to be used. And from what we have previously pointed out it is apparent that the questions in the second group were also irrelevant. The trial court's rulings were therefore proper.

The judgment is affirmed.

Ashburn, J., concurred.

A petition for a rehearing was denied December 11, 1957, and appellant's petition for a hearing by the Supreme Court was denied January 6, 1958.