[No. B224000. Second Dist., Div. Eight. Mar. 22, 2011.]

CALIFORNIA RETAIL PORTFOLIO FUND GMBH & CO. KG, Plaintiff and Respondent, v.
HOPKINS REAL ESTATE GROUP, Defendant and Appellant.

850

COUNSEL

Nemecek & Cole, Jonathan B. Cole, D. Wayne Jeffries and Susan S. Baker for Defendant and Appellant.

DLA Piper US, Robert J. Odson and John D. Spurling for Plaintiff and Respondent.

OPINION

RUBIN, J.—Hopkins Real Estate Group (Hopkins Group) appeals from the trial court's order authorizing a writ of attachment for California Retail Portfolio Fund GMBH & Co. KG (California Retail) in connection with California Retail's arbitration proceeding against the Hopkins Group for breach of a real estate joint venture agreement. Because there was substantial evidence that an award for California Retail might be rendered ineffectual without a writ of attachment, we affirm the order.

## FACTS AND PROCEDURAL HISTORY

California Retail is a German limited partnership that entered into a partnership agreement with the Hopkins Group by which California Retail invested more than $5.5 million in five Southern California area shopping centers. The partnership agreement provided that California Retail would receive an annual payment of $582,000 every June 30 from 2006 through 2010. When the Hopkins Group failed to make the first two annual payments,

California Retail began arbitration proceedings pursuant to the partnership agreement's arbitration provision.[1]

Under Code of Civil Procedure section 1281.8, parties to arbitration proceedings may apply to the superior court for writs of attachment and other provisional remedies if, in addition to the usual requirements for such remedies, an award to the petitioner "may be rendered ineffectual" without such relief. (Code Civ. Proc., § 1281.8, subd. (b).)[2] In March 2010, California Retail applied to the trial court for a writ of attachment against various assets and funds owned by the Hopkins Group.

The unverified application alleged compliance with all the requirements for issuing a writ of attachment, along with an allegation that without the writ, an award in California Retail's favor would be ineffectual. The application was supported by the declaration of one of California Retail's officers, Joerg Kanebley. Kanebley summarized the terms of the partnership agreement and said that the Hopkins Group had failed to make the 2008 and 2009 annual payments. Neither the declaration, nor any of the other evidentiary materials submitted with the application, addressed whether an award might be ineffectual without the writ. Despite the evidentiary omission, the points and authorities in support of the application argued that an arbitration award for California Retail might be rendered ineffectual because the Hopkins Group was not paying its debts, and because Stephen C. Hopkins (Hopkins), who effectively controlled the Hopkins Group and its related entities, would make sure the company had no remaining assets by the end of the arbitration proceeding.

The Hopkins Group's opposition points and authorities noted the absence of evidence on three issues: (1) the existence of an enforceable written agreement (§ 483.010, subd. (a)); (2) proof of the probable validity of California Retail's claim, based on the Hopkins Group's counterdemand for arbitration of claims against entities related to California Retail that were also parties to the partnership agreement (§ 484.090, subd. (a)(2)); and (3) that an award for California Retail might be ineffectual without the writ. The opposition brief was supported by the declaration of Hopkins, who offered a different version of the events. However, apart from stating that neither he nor the Hopkins Group had ever declared bankruptcy, Hopkins's declaration was silent as to the solvency of the Hopkins Group.

---

[1] There are other parties to the arbitration agreement aligned with either California Retail or the Hopkins Group, but their identities and roles in the dispute are not relevant to the issues before us. Further details concerning the parties' complex partnership agreement are also irrelevant.

[2] All further undesignated section references are to the Code of Civil Procedure.

California Retail filed a reply brief that addressed these evidentiary gaps. As to the insolvency issue, which is the only relevant issue on appeal, California Retail provided a printout of a June 11, 2008 e-mail to Hopkins from Michael Haines, the chief financial officer of the Hopkins Group. In it, Haines said he wanted to speak with Hopkins about "some concerns I have regarding [the Hopkins Group's] overall liquidity, and other matters." Haines stated that "IGB [(a California Retail entity)] wants more clarity on the game plan for Fontana and where the IGB II funds are. I don't know how those funds were used so I can not [*sic*] answer that question. Also, my sense is that missing the guaranteed payments to IGB on Funds I, II and III will likely cause them to not fund on Fund IV. That will put us in a position where we can't resolve Clearfund III and won't be in a position to payoff [*sic*] the Renfro Note. Andy looked at the IGB agreements. Assuming the payments aren't made and something is not worked out, IGB would at a minimum go after the guaranteed payments that you personally guaranteed." Haines went on to state that completing another transaction would "generate some cash but I do not believe it will be enough to meet all of our needs . . . ." Haines cautioned that "we are not being up front with" another entity about the payments owed to IGB. Haines concluded that "[a]vailable cash is being used up and our development fee stream is effectively down to [shopping centers in Carson and Redlands] which does not come close to covering overhead. [¶] I have brought up assets sales before to monetize value and I know there is concern that we would be discounted but I think we have to look at all alternatives. [¶] It is very important to discuss all of this to strategize on how to keep the Company capitalized."

The delayed production of this e-mail was explained in a declaration from one of California Retail's lawyers. She said that the Hopkins Group had not fully responded to California Retail's discovery requests, forcing California Retail to obtain an interim order from the arbitrator compelling the production of certain documents. The e-mail from Haines to Hopkins was among those produced. The Hopkins Group did not turn over the materials until March 19, 2010, eight days after the application for a writ of attachment was filed. The Hopkins Group does not dispute these events.

At the hearing on the writ application, the Hopkins Group objected that the e-mail from Haines was inadmissible because it was both unauthenticated and hearsay. The trial court never ruled on the objection, and counsel for the Hopkins Group never asked it to do so. When the trial court asked counsel for the Hopkins Group about the absence of an explanation from his client about why the guaranteed annual payments had not been made, counsel said he could not answer that question. The court asked whether there were "certain inferences that [it could] make that are common sense out of what it does have." After further brief argument, the trial court granted the application for a writ of attachment.

## STANDARD OF REVIEW

■ To the extent we interpret section 1281.8, we are presented with an issue of law to resolve under the rules of statutory interpretation. (*On-Line Power, Inc. v. Mazur* (2007) 149 Cal.App.4th 1079, 1085 [57 Cal.Rptr.3d 698].) " 'The fundamental rule of statutory construction is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. . . . In doing so, we first look to the words of the statute and try to give effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage. The words must be construed in context and in light of the nature and obvious purpose of the statute where they appear. . . . The statute " 'must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. . . .' " . . . If the language of a statute is clear, we should not add to or alter it to accomplish a purpose which does not appear on the face of the statute or from its legislative history.' [Citation.] Statutes must be harmonized, both internally and with each other." (*Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 994 [94 Cal.Rptr.2d 643].) When a statute is ambiguous, we may consider its legislative history. (*Coso Energy Developers v. County of Inyo* (2004) 122 Cal.App.4th 1512, 1526 [19 Cal.Rptr.3d 669].)

To the extent we review the trial court's factual findings, the substantial evidence standard applies. Under that standard, we view the evidence in favor of the prevailing party, and resolve all conflicts and draw all reasonable inferences in favor of the order. (*Bank of America v. Salinas Nissan, Inc.* (1989) 207 Cal.App.3d 260, 273 [254 Cal.Rptr. 748].)

## DISCUSSION

1. *Ineffectual Relief Is a Species of Irreparable Injury That Includes Insolvency or Other Evidence of Extreme Financial Distress*

■ Under section 1281.8, a party to an arbitration agreement may file an application in superior court for certain provisional remedies without waiving the right to arbitrate. (§ 1281.8, subds. (b), (d).) Those provisional remedies include appointment of receivers, writs of possession, temporary restraining orders, and preliminary injunctions. They also include writs of attachment and protective orders issued under title 6.5 of part 2 of the Code of Civil Procedure, beginning with section 481.010. (§ 1281.8, subd. (a)(1)–(4).) The writ may issue "only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." (*Id.*, subd. (b).)

■ "The logical reason for the requirement that an applicant be required to show that an arbitration award may be rendered ineffectual is to ensure that the court does not invade the province of the arbitrator—i.e., the court should be empowered to grant provisional relief in an arbitrable controversy only where the arbitrator's award may not be adequate to make the aggrieved party whole." (*Woolley v. Embassy Suites, Inc.* (1991) 227 Cal.App.3d 1520, 1527 [278 Cal.Rptr. 719].) In addition to the requirement of ineffectual relief, the applicant must also satisfy the statutory or common law requirements that pertain to the provisional remedy it seeks. (*Id.* at pp. 1528–1529.)[3]

Although there are a handful of reported decisions concerning the ineffectual relief requirement when issuing an injunction as a provisional remedy in an arbitration proceeding, only one federal court decision has addressed the issue as to writs of attachment: *China National Metal Products Import/Export v. Apex Digital* (C.D.Cal. 2001) 141 F.Supp.2d 1013 (*China National*). That case involved an arbitration between a Chinese exporter of DVD players and one of its buyers. At issue was whether the federal district court had jurisdiction to issue a writ of attachment under the federal law governing the enforcement of foreign arbitration awards, and, if so, whether such a writ was proper. The federal magistrate answered yes to both questions.

Because the writ was sought in a district court in California, the court applied our state's laws governing attachments, including section 1281.8. After finding that the traditional requirements for a writ of attachment had been satisfied, the *China National* court turned to section 1281.8 and the ineffectual relief requirement. Without discussion or citation to authority, the court found that because the buyer was having a "problem with [its] finances," and appeared to be "having financial difficulties," any award for the exporter might be rendered ineffectual. (*China National, supra,* 141 F.Supp.2d at p. 1028.) The evidence supporting this finding included the company's unwillingness to pay its debts, threats by its customers for claims of indemnification in the millions of dollars, and a statement from the company's president that the company was having financial difficulties, thus making it hard to meet its obligations. (*Ibid.*)[4]

---

[3] The requirements for obtaining a writ of attachment are (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the plaintiff has established the probable validity of the claim; (3) the attachment is not sought for a purpose other than the recovery of the claim upon which the attachment is based; and (4) the amount to be secured by the attachment is greater than zero. (§ 484.090, subd. (a)(1)–(4); see also § 483.010.)

[4] The magistrate's decision in *China National* was later set aside by the district court in *China National Metal Products v. Apex Digital* (C.D.Cal. 2001) 155 F.Supp.2d 1174, on the ground that an international agreement governing arbitrations precluded the court from issuing writs of attachment. The district court did not consider the ineffectual relief requirement.

■ Both the legislative history of section 1281.8, as well as the terms of the statute itself, support the notion expressed in *China National* that the apparent insolvency of a party to an arbitration agreement, or other evidence showing that the party was experiencing severe financial difficulties, is sufficient to satisfy the ineffectual relief requirement.[5]

Only two documents in the legislative history addressed this issue. The first describes the requirement of ineffectual relief in the proposed legislation as "(e.g., the provisional remedy is needed to preserve the value or worth of item [*sic*] in dispute under the arbitration agreement)." (Dept. Consumer Affairs, Enrolled Bill Rep. on Sen. Bill No. 1394 (1989–1990 Reg. Sess.) Sept. 11, 1989, p. 1.) Because there is no particular item in dispute here, this statement does not help us. However, the second document does. After setting forth the ineffectual relief requirement, this report describes it as being "similar to irreparable harm." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1394 (1989–1990 Reg. Sess.) May 16, 1989, p. 2 [proposed amendment].)

■ "Irreparable harm" is a cornerstone of the availability of another provisional remedy, injunctive relief (see § 526, subd. (a)(2)), a provisional remedy also expressly allowed by section 1281.8. In the context of injunctions, insolvency or the inability to otherwise pay money damages is a classic type of irreparable harm. (*Leach v. Day* (1865) 27 Cal. 644, 646; *Friedman v. Friedman* (1993) 20 Cal.App.4th 876, 890 [24 Cal.Rptr.2d 892].) A close examination of section 1281.8 confirms that both insolvency and the inability to otherwise pay damages are appropriate measures of irreparable harm that might render an arbitration award ineffectual when a writ of attachment is sought.

As noted above, section 1281.8 authorizes the issuance of writs of attachment in arbitration proceedings "pursuant to Title 6.5 (commencing with Section 481.010) of Part 2." (§ 1281.8, subd. (a)(1).) Included within title 6.5 is chapter 5, which sets forth the procedures for obtaining an ex parte writ of attachment.[6] Article 1 of that chapter is headed, "Great or Irreparable Injury Requirement." It contains only one provision—section 485.010—which sets forth the showing required to obtain an ex parte writ of attachment:

"(a) Except as otherwise provided by statute, no right to attach order or writ of attachment may be issued pursuant to this chapter unless it appears

---

[5] We notified the parties that we were considering whether to take judicial notice of the legislative history of Code of Civil Procedure section 1281.8, and offered them the opportunity to submit letter briefs on the issue. (Evid. Code, § 459, subd. (d).) They declined to do so.

[6] Unless a party seeking to attach satisfies the ex parte requirements, attachment orders may be issued only upon noticed motion. (§ 484.310 et seq.)

from facts shown by affidavit that *great or irreparable injury* would result to the plaintiff if issuance of the order were delayed until the matter could be heard on notice.

"(b) The requirement of subdivision (a) is satisfied if any of the following are shown:

"(1) Under the circumstances of the case, it may be inferred that there is a danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice.

"(2) Under the circumstances of the case, it may be inferred that the defendant has failed to pay the debt underlying the requested attachment and the defendant is insolvent in the sense that the defendant is generally not paying his or her debts as those debts become due, unless the debts are subject to a bona fide dispute. Plaintiff's affidavit filed in support of the ex parte attachment shall state, in addition to the requirements of Section 485.530, the known undisputed debts of the defendant, that the debts are not subject to bona fide dispute, and the basis for plaintiff's determination that the defendant's debts are undisputed. [¶] . . . [¶]

"(5) Any other circumstance showing that great or irreparable injury would result to the plaintiff if issuance of the order were delayed until the matter could be heard on notice." (Italics added.)

■ When a statute is ambiguous, section headings may be considered in determining legislative intent and are entitled to considerable weight. (*Woodland Park Management, LLC v. City of East Palo Alto Rent Stabilization Bd.* (2010) 181 Cal.App.4th 915, 923, fn. 5 [104 Cal.Rptr.3d 673].) Because the Legislature did not specify what constitutes "ineffectual relief" under section 1281.8, we conclude that it is proper to consider both the heading of part 2, title 6.5, chapter 5, article 1—"Great or Irreparable Injury Requirement"—and the only statute contained in that article, section 485.010. We reach this conclusion in three steps. First, the legislative history of section 1281.8 refers to irreparable harm as a touchstone for the ineffectual relief requirement. Second, "irreparable harm" includes the concepts of insolvency and the inability to pay a damage award. Third, the Legislature included ex parte writs of attachment among the provisional remedies authorized under section 1281.8, and section 485.010 of that article defines a variety of irreparable injuries, including insolvency. ■ In short, we believe that section 485.010, along with its article heading, is instructive on the concept of ineffectual relief under section 1281.8, and that the courts may look to the criteria of section 485.010 when deciding that issue.

As discussed below in part 2.A., the Hopkins Group takes this point even further and contends that strict compliance with the standards for showing irreparable harm under section 485.010 is required in order to obtain a writ of attachment under section 1281.8. Thus, the Hopkins Group argues in its reply brief that California Retail must submit supporting declarations that (a) list the Hopkins Group's known undisputed debts; (b) state that the debts are not subject to a bona fide dispute; and (c) state the basis for California Retail's determination that the Hopkins Group's debts are undisputed. (§ 485.010, subd. (b)(2).)

This argument mixes apples and giraffes. The purpose behind the additional requirements in section 485.010 is to avoid the irreparable injury that would otherwise befall an attaching party "if issuance of the order were delayed until the matter could be heard *on notice*." (§ 485.010, subd. (a), italics added.) The factors identified by the Hopkins Group in its reply brief compare only one of the five different ways a party can satisfy the exception for ex parte (as opposed to noticed motion) issuance of a writ. (*Id.*, subd. (b)(1)–(5).) The specifics of these statutory requirements have little to do with arbitration attachments on noticed motion. What is significant, in our view, is that the attachment law logically connects the legal dots of "ineffectual relief" to "irreparable harm" to "insolvency or inability to pay one's debts," and part of that analysis includes the language in section 485.010.

There is nothing in the arbitration act itself, or its legislative history, that suggests the Legislature intended to incorporate all the requirements for obtaining an ex parte writ of attachment in a traditional court case into the statute for obtaining an attachment in an arbitration case by noticed motion.[7]

Based on the statutory scheme and the applicable legislative history, we conclude that the standards for irreparable harm set forth in section 485.010 provide *guidance* to the trial courts on the issue of ineffectual relief under section 1281.8. Accordingly, we next examine whether the evidence before the trial court supports a finding that without the writ of attachment, an award for California Retail might be rendered ineffectual.

2. *There Is Substantial Evidence That an Arbitration Award Against the Hopkins Group Might Be Rendered Ineffectual*

   A. *There Was Substantial Evidence of the Hopkins Group's Insolvency*

The term "insolvency" has two generally accepted definitions: (1) where there is an excess of liabilities over assets; and (2) where one is

---

[7] Whether ex parte writ applications may be made under section 1281.8, and, if so, what showing an applicant must make to obtain such a writ, are issues we do not decide.

unable to meet obligations as they mature in the ordinary course of business. In the absence of a controlling statutory definition, the second definition is preferred. (*Stark v. Shaw* (1957) 155 Cal.App.2d 171, 179 [317 P.2d 182].) Based on the statements in the e-mail from Haines to Hopkins, we conclude that both definitions were satisfied.

Haines, who was the chief financial officer for the Hopkins Group, said he had concerns about the Hopkins Group's "overall liquidity." Haines said that missing the guaranteed payments to certain parties to the partnership agreement would cause a failure by those parties to fund another project, posing a risk of default on a certain note. Haines said that completing another transaction would generate some cash, but not "enough to meet all of our needs." He warned that cash was "being used up," income was down, and the remaining sources of revenue did "not come close to covering overhead." He concluded by proposing selling off assets at a discount and said it was important to discuss "how to keep the Company capitalized."

■ Haines's statements are compelling evidence that the Hopkins Group was running out of money and, if it was not already there, would soon be unable to pay its debts. The only evidentiary counter to this was Hopkins's statement in his declaration that the Hopkins Group had never declared bankruptcy. However, that the Hopkins Group had not yet declared bankruptcy is not very probative of whether it was insolvent. For instance, bankruptcy is not always a voluntary matter and may be forced upon a debtor by a petition for involuntary bankruptcy. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1107–1108 [51 Cal.Rptr.2d 286].)[8] And when the trial court asked counsel for the Hopkins Group whether there was some explanation for its failure to pay the money it owed California Retail, counsel said he had none.

■ Based on this, we conclude that the Hopkins Group barely raised an evidentiary conflict with the strong evidence of insolvency contained in Haines's e-mail. Under the applicable standard of review, we resolve that conflict in favor of the trial court's order.[9]

The Hopkins Group challenges the sufficiency of the evidence on several grounds. It contends that the Haines e-mail is insufficient because it was

---

[8] We must take judicial notice of the statutory laws of the United States. (Evid. Code, § 451, subd. (a).)

[9] California Retail contends, mostly as an afterthought, that portions of another declaration from its officer, Kanebley, submitted to the trial court with the reply points and authorities, contained evidence of insolvency. In that declaration, Kanebley said that Hopkins had misappropriated $2 million of investor funds for his personal use or to cover the Hopkins Group's operating expenses.

However, these statements were included in Kanebley's declaration to the arbitrator in support of California Retail's application for an order compelling the Hopkins Group to

unauthenticated hearsay; it was part of California Retail's reply papers, not its writ application; and, it was written in 2008, and therefore had no relevance to the Hopkins Group's financial condition when the writ application was filed in 2010.

Although the Hopkins Group objected to the admissibility of the e-mail at the hearing on the writ application, the trial court did not rule on its objection, and no ruling was requested. As a result, evidentiary objections to the e-mail were waived. (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1421 [130 Cal.Rptr.2d 385].)[10]

As for submitting the e-mail as part of its reply brief, and not its initial writ application, California Retail explained that the e-mail was produced by the Hopkins Group after the writ application was filed, and only after the arbitrator granted California Retail's discovery request and ordered the Hopkins Group to turn over various documents. The Hopkins Group does not contest these facts. Because the trial court had discretion to consider new evidence in California Retail's reply papers (*Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1307–1308 [72 Cal.Rptr.3d 259]), we hold that no abuse of discretion occurred when the trial court accepted and considered the Haines e-mail. Furthermore, the Hopkins Group did not object to the document on that basis and did not ask for a continuance to rebut the evidence of its insolvency contained in the e-mail. The issue is therefore also waived. (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1426 [120 Cal.Rptr.2d 392].)

As to Haines's e-mail being about two years old, that fact went solely to the weight of the evidence. Although the Hopkins Group argued the point to the trial court, its argument was not supported by any evidence of its solvency. Without countervailing evidence, the trial court could reasonably infer that no steps were taken to remedy the Hopkins Group's decaying financial condition, as described in the 2008 e-mail, and that its downward spiral therefore continued. And, as just noted, the Hopkins Group did not

produce certain documents. The declaration was submitted with California Retail's writ of attachment reply papers for only one reason—as support for its contention that it was unable to obtain the Haines e-mail until after the application was filed due to the Hopkins Group's intransigence.

The statements concerning allegations of misappropriation were not mentioned in either the reply papers or as part of California Retail's argument at the hearing on its writ application. Furthermore, the declaration was prepared in 2009, long before the writ application was filed, and could have been submitted with that application. Therefore, we do not consider the second Kanebley declaration.

[10] Both parties filed numerous written evidentiary objections to the other's declarations and documents, but the trial court did not rule on those either.

object to the lateness of the e-mail or ask for more time to present evidence of its financial condition that was both contrary and more current.

Finally, the Hopkins Group contends that California Retail did not satisfy section 485.010, subdivision (b)(2) by producing evidence of the Hopkins Group's failure to pay known undisputed debts, or that those debts were in fact undisputed. However, as previously discussed, strict compliance with the requirements of section 485.010 is not required. Assuming for the sake of argument that it was, we affirm because this issue was not raised in the trial court, and was first raised on appeal in the Hopkins Group's appellate reply brief, making it doubly waived. (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427 [115 Cal.Rptr.3d 707].)

### B. *Irreparable Harm Was Also Shown by Evidence That the Hopkins Group Might Not Be Able to Pay an Award for California Retail*

The Hopkins Group's arguments have focused on only one of the five grounds for obtaining an ex parte writ of attachment under section 485.010: whether it was insolvent in the sense that it was not paying its undisputed debts as they became due. However, section 1281.8 never mentions insolvency. Instead, a writ of attachment is proper as part of an arbitration proceeding when any award "might be rendered ineffectual" without it.

As discussed earlier, the legislative history of section 1281.8 describes the ineffectual relief requirement as something akin to irreparable harm (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1394 (1989–1990 Reg. Sess.) May 16, 1989, p. 2 [proposed amendment]), which, in the context of the provisional remedy of injunctive relief, occurs when someone is either insolvent or unable to pay money damages. (*Leach v. Day, supra,* 27 Cal. at p. 646; *Friedman v. Friedman, supra,* 20 Cal.App.4th at p. 890.) We believe the inability to pay damages is an alternative to insolvency that also falls within the catchall language of section 485.010, subdivision (b)(5) where "[a]ny other circumstance[s]" show that great or irreparable injury would result.

For the reasons discussed above, we also conclude that Haines's e-mail cast tremendous doubt on the Hopkins Group's ability to pay an arbitration award for California Retail, and therefore qualified as another circumstance of irreparable harm that might render such an award ineffectual.[11]

---

[11] As we have already observed, at the attachment hearing counsel for the Hopkins Group could offer no explanation why his client had not paid the money owed to California Retail.

## DISPOSITION

The order granting California Retail's application for a writ of attachment is affirmed, and California Retail shall recover its appellate costs.

Bigelow, P. J., and Grimes, J., concurred.