[L. A. No. 5369. In Bank.—October 11, 1920.]

J. D. FULLER, Appellant, v. Z. A. TOWNE, Respondent.

[1] CONTRACT—PAYMENT OF CLAIMS OF MATERIALMEN—WITHDRAWAL OF STOP NOTICES—PROMISE OF INDEMNITOR OF SURETY ON CONTRACTOR'S BOND—FINDING CONTRARY TO EVIDENCE.—In an action by the holder of assigned claims of materialmen to recover the balance due on such claims from the indemnitor of the surety on the bonds of the building contractor, a finding that the defendant, after his completion of the building upon the disappearance of the contractor, did not agree at a creditor's meeting to pay all claims and make good any deficiency, in consideration of the withdrawal of stop notices given by such materialmen, is contrary to the evidence, where several witnesses testified to the arrangement and the only evidence for the defendant was his own testimony, which did not controvert the testimony of such witnesses.

[2] ID.—SUFFICIENCY OF CONSIDERATION—IMMATERIALITY OF VALIDITY OF BUILDING CONTRACT.—Where the indemnitor of a surety on the bonds of a contractor to erect a schoolhouse agreed with certain materialmen, who had given stop notices after the disappearance of the contractor, that if they would withdraw their notices in order that he could obtain the balance due from the school district under the building contract, he would use the money to pay all claims and make good any deficiency, his promise was sup-

ported by a consideration and enforceable at law, regardless of whether or not the building contract and bonds were valid or whether or not he was legally obligated to pay such claims on the contractor's default.

[3] MECHANICS' LIENS — STOP NOTICES — MONEYS NOT DUE — CONSTRUCTION OF STATUTE.—Section 1184 of the Code of Civil Procedure makes a stop notice effective as to any money subsequently falling due under the contract without any provision that the money be due at the time of the giving of the notice, or that the notice be effective only as to money falling due next after the use in the building of the materials on account of which the notice is given.

[4] CONTRACT — COMPLETION OF BUILDING BY INDEMNITOR — STOP NOTICES—SCOPE OF.—Where the indemnitor of the surety on the bonds of a contractor to erect a schoolhouse on the contractor's default stepped into the contractor's shoes and completed the building, stop notices given by materialmen to the school district were effective under the statute as to all money due or thereafter becoming due under the contract, regardless of whether the notice was for labor or material furnished for the building at the instance of the contractor or at the instance of the indemnitor.

[5] ID.—CONTRACT TO PAY CLAIMS — WITHDRAWAL OF STOP NOTICES—SUFFICIENCY OF CONSIDERATION—LEGALITY OF NOTICES IMMATERIAL.—A contract to pay claims of materialmen in consideration of the release of stop notices claimed in good faith to be effective is supported by a sufficient consideration and is valid, regardless of whether or not the notices are in truth legally effective.

[6] ID.—ORAL AGREEMENT OF INDEMNITOR — STATUTE OF FRAUDS.—An oral agreement of an indemnitor of a surety on a contractor's bond to apply all moneys received under the building contract to payment of claims and make good any deficiency, in consideration of the release of stop notices given to the owner of the building, in order that the indemnitor might collect the balance due on the contract, is not within the statute of frauds, as a promise to answer for the debt of another, in view of the exception contained in subdivision 3 of section 2794 of the Civil Code.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge. Reversed.

The facts are stated in the opinion of the court.

Sheldon Borden, Richard J. O. Culver, G. C. De Garmo and Albert A. Kidder, Jr., for Appellant.

Tanner, Odell & Taft for Respondent.

OLNEY, J.—The plaintiff, as the holder by assignment of certain claims against one La Rue, brought the present action against the defendant, Towne, upon the alleged promise of the latter to pay the claims. After trial, judgment went for the defendant, and the plaintiff appeals. The facts, as stated in the complaint, are, in brief:

La Rue, in April, 1915, entered into a contract with the trustees of the school district of Watts, in Los Angeles County, to erect a schoolhouse, and induced a surety company to execute two bonds on his behalf, one for the faithful performance of the contract and the other for the payment of claims for labor done upon, or materials furnished for, the building. These bonds were furnished by the surety company in reliance upon a written contract previously executed by the defendant, whereby he agreed to indemnify the company against loss upon any bonds they might give on behalf of La Rue. La Rue commenced the erection of the building and had partially completed it when he disappeared. The defendant thereupon, induced by his responsibility on his indemnity contract, undertook to complete it and did so. Prior to his disappearance La Rue had purchased and failed to pay for materials furnished for the building, and it is the claims for the price of materials so furnished which the plaintiff holds by assignment and upon which he sues. After La Rue's disappearance, stop notices on behalf of each of these claims against any money payable by the school district for the building were given the district by the plaintiff's assignors. Upon the completion of the schoolhouse, there was a considerable balance due from the school district under the building contract. In order to obtain this money, the defendant promised the plaintiff's assignors that if they would withdraw their stop notices, so that he could secure payment from the school district, he would use the money so obtained to pay the claims against the work, including their claims, and would pay any deficiency out of his own pocket. The plaintiff's assignors accordingly released their claims so far as the school district was concerned, and the balance due for the building was paid the defendant. With this balance he paid in full all bills which he had himself incurred in connection with the work, and applied the remainder *pro rata* to the payment of the claims incurred by La Rue. The remainder was not sufficient to pay these

latter claims in full, the defendant refused to make the deficiency good, as it is alleged he promised to do, and the complaint asks for judgment against him for the amount of the deficiency.

It is apparent at once upon the foregoing facts, as stated in the complaint, that the gravamen of the plaintiff's cause of action is the alleged promise of the defendant to make good the deficiency. The other material facts appear practically without dispute, and if the defendant actually made the promise, he is liable upon it, for it was a promise made for and supported by a sufficient consideration. It may be that he would be liable even if this particular promise were not made, for the complaint goes on to allege a number of other promises by the defendant, made subsequently to the one we have mentioned. But these later promises, as alleged are based upon the prior promise, and we are not certain that they are supported by any consideration other than the obligation of the prior promise, so that if the prior promise were not made, it may be that the subsequent promises are not contractual in effect for want of a consideration. But it is not necessary to decide the question so presented, and for the purposes of discussion on this appeal we may assume the view most favorable to the defendant, and that is that the later promises would not be effective unless supported by the prior promise mentioned, so that the situation is that if the defendant made that promise, he is liable, and if he did not make it, he is not. The trial court found that he did not make it, and the most fundamental question presented by the appeal is as to whether or not this finding is contrary to the evidence.

[1] An examination of the record makes it plain that the finding is contrary to the evidence and wholly without support in it. The evidence for the plaintiff is that upon the disappearance of La Rue the defendant engaged one Pierce, a credit man for one of La Rue's creditors, to advise or assist the defendant in the situation in which he found himself by reason of his agreement to indemnify the surety company which was La Rue's bondsman; that a meeting of creditors was had whereat Pierce, speaking for the defendant, who was present and acquiesced in all that Pierce said, informed the creditors that the defendant would undertake to complete the building and pay all claims in full, provided

he was not harassed or pressed; that upon the completion of the building another meeting of creditors was had, with the defendant and Pierce present, and at this meeting substantially the arrangement alleged in the complaint was made between the creditors and the defendant, that is, the creditors were to withdraw their stop notices, and the defendant was to collect the money due from the school district and apply it to the claims against the work, and was himself to make good the deficiency which was known at the time to exist. There were quite a number of witnesses to the foregoing facts. There was also considerable testimony as to the defendant's subsequent conduct, which strongly corroborates the testimony that the arrangement claimed was made. According to this testimony, the defendant later gave his note and mortgage for the deficiency, but there was some clerical defect in the instruments, and, upon their return to the defendant for correction, he refused to redeliver them. There was also introduced in evidence a verified pleading by the defendant in another action wherein it was stated that he had executed such note and mortgage.

The only evidence for the defendant was his own testimony. He admitted that at the first meeting of the creditors he was present and allowed Pierce to speak for him, and does not controvert the fact that Pierce stated that he would pay the claims against the work in full. As to the meeting after the completion of the building, when the arrangement which is the crux of the case is claimed by the plaintiff to have been made, the defendant does not testify at all. Nor does he in his testimony deny having promised to make good the deficiency. He does deny ever having promised to give a mortgage or ever having executed one, and that is about all of substance that he does deny. Even as to that, he admits signing some papers which may have been the note and mortgage, but says he signed them without reading them and in the belief that they were something else. He likewise explains the verification of the pleading which alleged that he had executed such note and mortgage by saying that he had sworn to the pleading without reading it. It is doubtful if his testimony was sufficient to justify the finding which the court made that he did not execute the note and mortgage. But whether it was or not, it was wholly insufficient to justify the finding that he did not make the arrangement

at the creditors' meeting which is the basis of the action.
That arrangement was testified to by several witnesses; there
is nothing whatever to cast doubt upon their testimony,—on
the contrary, all the circumstances of the case tend to cor-
roborate it, and the defendant's evidence does not controvert
it.   There is but one conclusion possible and that is that the
finding is contrary to what is the plain fact in the case.

[2]   We have stated that if this finding were not justified,
if the promise substanially as alleged in the complaint were
in fact made, the defendant was liable.   *Prima facie,* of
course, this statement is true, for the promise was made for
a consideration, the withdrawal by the plaintiff's assignors
of their stop notices so that the defendant might collect the
balance on the building contract from the school district,
and being supported by a consideration, creates a contractual
obligation enforceable at law.   Counsel for the defendant,
however, contend that the statement is not true for several
reasons, and the cause should not be decided without a dis-
cussion of these reasons.   Among those urged are that there
was no valid contract between La Rue and the school district
that the bonds which the surety company signed on La Rue's
behalf were not valid, that the bonds given by the surety
company did not fall within the defendant's indemnity con-
tract, and that the defendant never received any considera-
tion for executing the indemnity contract.   Some of these
reasons are advanced in more than one form.   They all, how-
ever, go to the single point that because of them the defend-
ant was not liable on his indemnity contract and was there-
fore under no obligation because of La Rue's default, and
in particular was under no obligation to pay the bills of
plaintiff's assignors for materials furnished for the work.
The answer is that it is wholly immaterial whether the de-
fendant was so obligated or not.   He is not being sued upon
that obligation, but upon a wholly independent one which
he later assumed voluntarily, in consideration of the plain-
tiff's assignors releasing their stop notices.   His motive for
assuming this later obligation may have been his belief that
he was responsible for La Rue's bills, because of the in-
demnity contract, but his mistaken belief in this respect, if
it was a mistake, does not entitle him now to deny or avoid
the contractual arrangement which he made.   Even if he
could have avoided that arrangement in the first instance on

the ground of mistake, which is very doubtful at best, he certainly cannot do so now, when it is wholly impossible to restore the creditors to the position they were in when by his promise he induced them to release their stop notices.

Another reason advanced why the defendant should not be responsible upon his promise is that, according to the claim of counsel, the stop notices were wholly ineffective. The trial court, in fact, made an express finding to that effect, but the finding is very evidently but a conclusion of law. It is rather difficult to get clearly the ground upon which it is claimed the notices were ineffective. Apparently it is one or more of the following: (1) The fact that the materials for whose price the notices were given had all been used in the building at the time of La Rue's disappearance, and La Rue had been paid all installments due up to that time; (2) the fact that no money was due on the building when the notices were given; and (3) the legal proposition that the work done by the defendant was as if done under a separate contract from that done by La Rue. [3] As to the first two grounds, it is sufficient to say that the statute makes a stop notice effective as to any money subsequently falling due under the contract without any provision that the money be due at the time of the giving of the notice, or that the notice be effective only as to money falling due next after the use in the building of the materials on account of which the notice is given. The statute (Code Civ. Proc., sec. 1184), reads: "Upon such notice being given . . . the owner or person who contracted with the contractor, shall withhold from his contractor sufficient money due or that may become due to such contractor to answer such claim. . . . " (See, also, *Diamond Match Co.* v. *Silverstein*, 165 Cal. 282, [131 Pac. 874].)

[4] As to the third ground, the answer is that the defendant undertook the completion of the schoolhouse, not under a new or separate contract or as an independent contractor, but under La Rue's contract and as one completing the contract for La Rue upon the latter's default. The defendant simply stepped into La Rue's shoes, and consequently a stop notice was effective under the statute as to all money due or thereafter becoming due under the contract, regardless of whether the notice was for labor or materials furnished for the building at the instance of La

Rue or at the instance of the defendant. There is nothing contrary to these views in *Hughes Bros.* v. *Hoover,* 3 Cal. App. 150, [84 Pac. 681], and *Clark* v. *Beyrle,* 160 Cal. 314, [116 Pac. 739], cited by defendant's counsel. Furthermore, it would make no difference if the notices were legally ineffective as counsel claims. The plaintiff's assignors filed them in good faith and were claiming under them in good faith. They had a right to insist upon them and were under no obligation to release them. **[5]** This being the case, a contract in consideration of their release is supported by a sufficient consideration and is valid, regardless of whether or not the notices were in truth legally effective. (13 Corpus Juris, 346.)

**[6]** The final contention on behalf of the defendant which requires discussion is that the promise sued upon was within the statute of frauds as a promise to answer for the debt of another, and was not in writing. The promise was certainly one to answer for the debt of another, and it was not in writing nor was there any written memorandum of it. But section 1624 of the Civil Code and section 1973 of the Code of Civil Procedure, which constitute our statute of frauds as to contracts of this character, both except from their operation the cases provided for in section 2794 of the Civil Code. This section specifies a number of cases wherein a promise to answer for a debt of another need not be in writing, but of these there is only one within which the defendant's promise here might fall. Omitting the provisions concerning other cases, the section reads as to the one material here:

"A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing. . . . 3. Where the promise, being for the antecedent obligation of another, is made . . . upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person."

It is clear that the present promise falls within the class so specified. Just two elements are required by the code provision, one, that the promise be for an antecedent obligation, and two, that the consideration be for the benefit of the promisor. Both elements are present here. La Rue's debts were antecedent obligations, and the consideration for the defendant's promise, the release or withdrawal of the cred-

itors' stop notices, was for his benefit. It was for the purpose and had the effect of enabling the defendant to secure from the school district the unpaid balance of the contract price for the schoolhouse. The defendant had himself incurred bills for labor and materials for completing the building for which he was responsible in any case. These bills he was enabled to pay by the money he secured from the school district upon the release by the creditors of La Rue of their stop notices, and one of the purposes of the arrangement was to enable him to do this. The direct benefit to the defendant is plain. It follows that it was not necessary that the defendant's promise be in writing. (See, also, *Leslie* v. *Conway*, 59 Cal. 442; *Sacramento Lumber Co.* v. *Wagner*, 67 Cal. 293, [7 Pac. 705]; *Doe* v. *Allen*, 1 Cal. App. 560, [82 Pac. 568].)

There are a number of other points discussed by counsel, but they are either answered or rendered unimportant by what has already been said. Judgment reversed.

Shaw, J., Lennon, J., Sloane, J., Wilbur, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred.