[Civ. No. 24387.   Second Dist., Div. One.   July 29, 1960.]

WORLD SAVINGS AND LOAN ASSOCIATION (a Corporation), Respondent, v. KURTZ COMPANY, INC. (a Corporation), Appellant.

Harry C. Cogen and Aaron L. Lincoff for Appellant.

B. Wallace Fischmann for Respondent.

FOURT, J.—This is an appeal from a money judgment granted plaintiff on account of certain expenditures made by plaintiff under the provisions of a written contract.

The plaintiff brought the action for money allegedly due under a written contract (see footnote, *infra*), for the sharing of the cost of installation of certain off-site improvements in certain subdivisions and on a common count for work, labor and service performed. The defendant filed its answer denying the obligation and further set up certain affirmative defenses, namely; (1) that there was an unreasonable delay in the doing of the work contemplated in the contract by the plaintiff which allegedly constituted a breach of the written agreement by the plaintiff; and (2) that there was not a good and valuable consideration for the agreement. The trial court found upon substantial evidence that there was no unreasonable delay in the performance of the work and that there was no substantial breach of the agreement which excused the defendant from performance thereunder and that there was a good and valuable consideration, and gave judgment accordingly. A motion for a new trial was denied.

A résumé of some of the facts is as follows:

According to the maps filed as exhibits at the time of trial, Devonshire Street runs generally east and west. Mayall Street is one block to the south of Devonshire and runs generally east and west. Lassen Street is one block to the south of Mayall Street and runs generally east and west. Gothic Avenue runs generally north and south and intersects Mayall Street and extends at least to Devonshire on the north and to Lassen on the south. Woodley Avenue runs generally north and south and is one block to the east of Gothic Avenue. Havenhurst Avenue runs generally north and south and is one block west of Gothic Avenue. Tract Number 20918 is immediately to the east of Gothic Avenue, north of Lassen Street and south of Mayall Street. Tract Number 21133 is immediately to the east of Tract Number 20918, west of Woodley Avenue, north of Lassen Street and south of Mayall Street.

Tract Number 20998 is immediately to the south of Mayall Street, west of Gothic Avenue and north of Lassen Street and extends westward to what appears to be the boundaries of the county flood control channel. Tract Number 15851 is immediately to the west of Gothic Avenue, south of Devonshire and north of Mayall and extends westward to what appears to be the boundaries of the county flood control channel.

On and before August 11, 1955, defendant Kurtz Company, Inc., was the owner and developer of tracts numbered 20918 and 21133. The plaintiff's predecessors in interest, Pennfield Park, Inc., and Powell Park, Inc., were the owners of the adjoining tracts to the west, numbered 15851 and 20998. On about August 11, 1955, the then parties made and entered into an agreement, a copy of which is set forth.[1]

---

[1] "AGREEMENT

"THIS AGREEMENT made and entered into this 11th day of August, 1955, by and between the KURTZ CO., INC., a California corporation, 13839 Ventura Boulevard, Sherman Oaks, California, hereinafter referred to as 'KURTZ', and PENNFIELD PARK, INC., a California corporation, and POWELL PARK, INC., a California corporation, 12415 Ventura Boulevard, Studio City, California, hereinafter referred to as 'PENN-FIELD and POWELL',

"WITNESSETH:

"WHEREAS, KURTZ is the owner or developer of certain property in the County of Los Angeles, State of California, known as tract numbers 20918 and 21133, and PENNFIELD and POWELL are the owners or developers of certain property in the same area known as tract numbers 15851 and 20998, and

"WHEREAS, it is to the mutual interest and benefit of the parties hereto in the development of said tracts to co-operate with each other in certain street and sewer work in the manner hereinafter set forth,

"NOW, THEREFORE, in consideration of the mutual promises herein contained, it is agreed as follows:

"1.

"With respect to Gothic Avenue, which will be shown on the tract maps as having a sixty (60) foot width, of which thirty (30) feet will be dedicated by each party, it is agreed that whichever party's development proceeds first and requires an extra ten (10) feet of paving in order to have the tract meet V. A. requirements, the other party shall dedicate the required ten (10) feet and will pay for the actual costs expended in grading and paving or improvements on said ten (10) foot portion.

"2.

"The cost of the sewer line on Gothic Avenue shall be borne equally by both parties hereto and the party installing the sewer line shall include the other party in the map as having participated in the cost of laying such sewer line.

"3.

"The cost of the offsite sewer line from the alley north of Lassen to Havenhurst shall be prorated between the parties hereto, based on the

On January 20, 1956, the plaintiff acquired from Pennfield Park, Inc., and Powell Park, Inc., tracts numbered 15851 and 20998 and an assignment of their rights under the contract of August 11, 1955.

Voorheis and Trindle, engineers and surveyors, prepared the tract maps and did the engineering work and layouts for the plaintiff, the plaintiff's predecessors in interest and the defendant as to all four tracts. The Voorheis firm apparently discussed with the parties the advisability of joining "together in the construction of the outlet facilities for the two tracts, rather than to have it all on one, or all on the other, without jockeying to see who recorded it first or second." Apparently in the absence of an agreement between the parties the company first recording the subdivision map of its property would have been required to install sewer lines in Gothic Avenue and Lassen Street to which the other would have been able to connect without charge for the cost of installation of such off-site sewer lines.

number of units to be developed by each of the parties in the tracts aforesaid.

"For the purpose of this paragraph the parties certify and represent that KURTZ will develop and construct 162 units and PENNFIELD and POWELL will develop and construct 118 units.

"4.

"Any rebate of engineering expenses resulting from the fact that it may be necessary to show the work of improvement on only one set of profiles shall be shared equally between the parties hereto.

"5.

"All of the costs and expenses hereinabove referred to shall be due and payable to the party incurring the same immediately upon completion of the particular work of improvement as herein specified.

"6.

"In the event any of the property hereinabove described is sold, transferred or conveyed to some third person prior to the completion of the improvements in this Agreement referred to, such sale, transfer or conveyance shall be made subject to all of the terms, conditions and provisions of this Agreement, it being understood, however, that the parties hereto shall, nevertheless, be responsible for the obligations which they have respectively incurred by virtue of this Agreement.

"7.

"This Agreement and all the terms and provisions shall, according to the context, inure to the benefit of and be binding upon the respective parties hereto, their successors and assigns.

KURTZ CO., INC.
By /S/ S. P. Kurtz

PENNFIELD PARK, INC.
By /S/ Bernard Krasik, Pres.

POWELL PARK, INC.
By /S/ Bernard Krasik, Secy."

The city of Los Angeles as a condition for the approval of the subdivision maps required, among other things, that sewer systems be installed, together with connections to the Havenhurst Avenue main outfall sewer line. The cost of the installation of the street and sewer line improvements on Gothic Avenue, as set forth in Paragraphs 1 and 2 of the written agreement were shared between the plaintiff and defendant corporations without difficulty. The dispute with which we are now concerned arises over the division of the costs of installing the off-site sewer line in Lassen Street. A plan for the installation of the main off-site sewer line in Lassen Street had been prepared by the Voorheis firm for the defendant company and plaintiff's predecessors on or before August 11, 1955. That plan was approved and signed by the city engineer of Los Angeles on or about October 24, 1955 and was on file with the city engineer in December of 1955. In December, 1955, the Department of Water and Power of the City of Los Angeles installed a high pressure water line of about 18 inches, 6 feet to the south of the then existing 14-inch water line and 1 foot from the originally planned location of the sewer line. It became necessary therefrom for the Voorheis firm in June or July of 1956 to plan a relocation of the Lassen Street sewer line at a substantial increase in costs.

In January of 1956 the plaintiff entered into a contract with the M. Miller Company for the installation of certain sewers on tracts 20998 and 15851 including the installation of the Lassen Street sewer line. The Miller Company performed a part of the contract with reference to the construction of the on-site sewers. In August of 1956 Miller Company notified the plaintiff that it would not be bound by its contract because of the installation of the high pressure line in Lassen Street by the Department of Water and Power which would necessarily increase the cost of the sewer line materially.

The plaintiff informed the defendant of the situation with reference to the Lassen Street sewer line and of the increased costs arising because of the construction of the high pressure water line by the Department of Water and Power. The defendant urged the plaintiff not to construct the sewer line at the increased cost and further urged the plaintiff to take action which might have resulted in holding the Department of Water and Power responsible for the increased costs.

In March of 1957 the plaintiff secured a bid from the sewer contracting firm of Drummond and Bronneck for the construction of the sewer line in question for the sum of $18,027. The

plaintiff attempted to secure the consent of the defendant to the making of such a contract to construct the sewer line. The defendant refused and continued to urge upon the plaintiff that it attempt to compel the city of Los Angeles either to install the line itself or pay the added costs.

In September of 1957 when it was no longer possible to defer the construction of the sewer line the plaintiff contracted with Drummond and Bronneck for the construction of the sewer line for the sum of $19,000. The sewer was installed and the plaintiff paid Drummond and Bronneck the amount due under their contract.

Some of the rise in the contract price from March, 1957 to September, 1957 was due to the intervening construction of a gas line in Lassen Street but the major increase in the cost over what it would have been in 1955 was due to the high pressure water line installed by the Department of Water and Power in December of 1955.

After the completion of the work and the payment to the contractor by the plaintiff, the plaintiff rendered a statement to the defendant in the sum of $10,992.86 (such sum being substantially $\frac{162}{280}$ of the total price paid) and the defendant refused to pay any part thereof.

Appellant asserts that the plaintiff's delay in having the sewer line construction work performed in Lassen Street was unreasonable and such unreasonable delay relieved the defendant of any obligation to pay any share of the cost of construction in excess of $3,661 (being about $\frac{162}{280}$ of the original bid made by the Miller Company before they were advised of the high pressure lines). The court made full findings on the question involved and in effect found that the delay was not unreasonable under the circumstances. The evidence was conflicting and it is true that had the trial judge believed the witnesses of the defendant he might have determined the cause in defendant's favor. Under the circumstances, "what constitutes a reasonable time may be either a question of law or a question of fact. . . . Generally it is a question of fact; . . ."

"The determination of what is a reasonable time must be made from the evidence presented in each case. The conduct and situation of the parties, the nature of the transaction, and the circumstances of the particular case should be considered. What would be a reasonable time under one set of

circumstances might be wholly unreasonable under other circumstances. Another factor to be considered in determining whether the time is reasonable is whether it is within such time as will work injury to the other party. In the absence of any showing that the time was so unreasonable as to render the contract oppressive or result in injury to the other party a jury finding that the time was reasonable will not be disturbed. But where an offer to perform is made so late that the other party is injured, a finding that performance was offered within a reasonable time cannot be upheld." (12 Cal.Jur.2d, § 160, Contracts.)

There was substantial evidence upon which the trial judge based his findings and it is not the province of this Court to attempt to reweigh the evidence.

Furthermore, it is clear that in this case the defendant at no time made a demand upon the plaintiff or its predecessors to install the Lassen Street sewer line. Indeed the opposite appears. The defendant encouraged the plaintiff to refuse to make the installation of the sewer line. The agreement itself does not state when any of the installations mentioned therein are to be installed nor is there any provision therein as to who was to cause the particular work to be done. ". . . [W]here no time is specified for the doing of an act, other than the payment of money, a demand for performance is necessary to put the promisor in default." (12 Cal.Jur.2d, Contracts, § 255, p. 485; *Tisdale* v. *Bryant,* 38 Cal.App. 750, 757 [177 P. 510] ; *Caner* v. *Owners Realty Co.,* 33 Cal.App. 479, 480-481 [165 P. 727] ; *Wilson* v. *Zorb,* 15 Cal.App.2d 526, 535 [59 P.2d 593] ; *Stark* v. *Shaw,* 155 Cal.App.2d 171 [317 P.2d 182] ; Civ. Code, § 1491.)

Appellant also asserts that the plaintiff and its predecessors in interest were obligated to construct and install the Lassen Street sewer line as a condition of the approval of their subdivision map by the city and there was, therefore, no consideration for the defendant's promise to pay its share of the cost thereof. There is substantial evidence in the record to the effect that the defendant received a benefit from the Lassen Street sewer line as constructed by the plaintiff. The defendant in constructing its tract did so, so as to take advantage of the sewer line on Lassen Street. The plaintiff suffered a detriment in that it waived and relinquished its right to delay any subdivision of its land until the defendant started subdividing and thereby putting itself in a position to take advantage of any installation of any sewer line in Lassen

Street by the defendant and without any contribution to the costs of such sewer line.

The trial court could well have determined from the evidence that "the right or the ability of either the plaintiff or the defendant to await the commencement of subdivision by the other before undertaking any subdivision activity of its own in order to obtain the advantage of the installation of sewer lines and streets by the other necessarily incident to the other's subdivision which could be availed of without contributing to the cost thereof, and the relinquishment and waiver of this right through the means of the agreement between the parties, . . . constitutes [a] real and substantial consideration that supports the agreement.'' ▮ The foregoing of a legal right constitutes a consideration for the contract if the minds of the parties meet on the relinquishment of the right as a consideration. In this case there was such evidence of such a meeting of the minds. (See *Blonder* v. *Gentile,* 149 Cal.App.2d 869 [309 P.2d 147] ; *Estate of Colton,* 164 Cal. 1 [127 P. 643] ; *Fuller* v. *Towne,* 184 Cal. 89 [193 P. 88].)

Each party in this case was to proceed as it saw fit with the subdivision and development of its respective properties without the peril or concern that the other would benefit by some improvement which the other would make use of without contributing to the cost of such improvement.

▮ We see no merit in the contention of the defendant that the contract was divisible into three separate distinct and different parts and was, therefore, a divisible contract with separate rights and duties.

▮ It is set forth in 12 Cal.Jur.2d, Contracts, section 150, at pages 364-365 as follows:

"A contract is entire, and not severable, when by its terms, nature, and purpose it contemplates and intends that each and all of its parts, material provisions, and consideration are common each to the other and interdependent. It is severable if it is in its nature and purpose susceptible of division and apportionment, having two or more parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other nor intended by the parties to be so. Where, for example, there is a purchase of different articles at different prices at the same time, the contract would be severable as to each article unless the taking of the whole were rendered essential either by the nature of the subject matter or by act of the parties.

▮ "The divisibility of a contract does not alone depend

on the multiplicity or separability of the items therein, but upon the intention of the parties and the object of the contract. If it was the intention to treat the contract as entire, and it appears that the engagements of the parties would not have been entered into except upon the understanding that the full object should be performed, the contract is not divisible. It will be treated as entire, even when the obligations of the one party consist of different acts to be separately paid for, where the nature and character of the agreement show that it was intended to be entire.

"Generally speaking, the test of whether a contract is divisible is that if the consideration is single, the contract is entire, but if the consideration is apportioned, or if apportionment is implied by law, the contract may be regarded as severable. It may even be severable as to some of its terms, or for certain purposes, but indivisible as to other terms, or for other purposes. Where the consideration is not apportioned and there is no basis or scale furnished by the contract to determine an apportionment, the contract must be regarded as entire. If the contract calls for the payment of a specified sum for the performance by the other party, it is not severable merely because payment is to be made in instalments."

There was ample evidence to the effect that the contract was not divisible and that the parties intended the entire matter to be single and indivisible.

Moreover there is a statutory presumption that a written contract is supported by a sufficient consideration. (Code Civ. Proc., § 1963, subd. 39; Civ. Code, § 1614.)

The trial court could have believed that there was insufficient evidence to overturn the presumption. The trial court made its findings based upon sufficient and substantial evidence that there was a good and valuable consideration for the contract.

We find no error in the proceeding.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.