Filed 4/4/23  Kalbali v. Kalbali CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ALI AKBAR KALBALI,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>AMIR KALBALI,<br><br>Defendant and Respondent. | H050089<br>(Santa Clara County<br>Super. Ct. No. 2015-1-CV-288039)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed herein on March 15, 2023, be modified as follows:

On page 13, line 1, the first full sentence beginning "Even more important" is deleted.


There is no change in judgment.


Respondent's petition for rehearing is denied.

Dated: _____                          _____
                                                    BROMBERG, J.


                                                    _____
                                                    GROVER, ACTING P.J.


                                                    _____
                                                    DANNER, J.

*Kalbali v. Kalbali*
H050089

Filed 3/15/23  Kalbali v. Kalbali CA6 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ALI AKBAR KALBALI, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> AMIR KALBALI, <br><br> Defendant and Respondent. | H050089 <br> (Santa Clara County <br> Super. Ct. No. 2015-1-CV-288039) |

This appeal arises out of a loan from one brother, appellant Ali Akbar Kalbali (Akbar), to another brother, respondent Amir Kalbali (Amir).[1]  The trial court dismissed Akbar's contract claim based on the statute of limitations, reasoning that the statute began to run on Akbar's claim for breach of the duty to repay the loan when Amir materially breached a different duty.  On appeal, Akbar argues that this ruling is erroneous.

We agree.  When violation of a duty materially breaches a contract, the injured party may treat the violation as a "total breach" and seek damages for failure to

---

[1] As this case involves multiple family members with the same last name, for the sake of clarity and convenience we refer to individuals by their personal names.  In doing so, we intend no disrespect.  (See, e.g., *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 550, fn. 2.)

perform all remaining duties under the contract. It is well-settled, however, that the injured party also may elect to treat the breach as a "partial breach" and to continue to stand on the contract, suing for any breach of the remaining duties if and when such breach occurs. As Akbar elected the second option here, the statute of limitations did not begin to run on his claim for failure to repay the loan until Amir breached his duty to repay the loan. We therefore reverse the trial court's ruling that the statute of limitations bars Akbar's contract claim, vacate the judgment, and remand for further proceedings on the claim.

## I. BACKGROUND

### A.

On November 13, 2015, Akbar filed a bare-bones, form complaint in Santa Clara County Superior Court. Akbar alleged that in 2006 he loaned Amir $148,722 under an oral agreement, but Amir later refused to repay the loan. In July 2019, after a default judgment was set aside, Akbar filed an amended complaint elaborating his claims.

In the amended complaint, Akbar alleged that he and Amir are brothers. In 2013, a third brother, Asghar, who is a real estate developer, formed a limited liability corporation named Rumi Group with Akbar, Amir, and their sister Mahin Adeeb to purchase a property and develop a commercial building on it. Because neither Akbar, Amir, nor Mahin had enough cash to make their capital contributions, Akbar took out home equity lines of credit on two properties that he owned. Out of the funds generated by the lines of credit, Akbar distributed $148,722 to Amir for his capital contribution and a slightly higher amount to Mahin for her contribution (which was higher due to her greater share in Rumi Group), and Akbar used most of the remainder for his own contribution.

Although there was no written agreement, Akbar alleged that it was agreed and understood that he was loaning money to Amir and Mahin, not giving it as a gift, and

2

that each would repay the amounts loaned when the property being developed by Rumi Group was sold. While no interest was to be charged on these loans, it was agreed that the three would contribute proportionally to the monthly payments needed to service the home equity lines.

Amir made the required service payments from 2006 to 2011, but when Akbar subsequently demanded repayment of the loan, Amir refused and expressly repudiated any obligation to repay the loan. Akbar therefore claimed that Amir breached the oral contract between them and sought damages in the amount of $148,722 plus "interest at 10% per annum from at least June 24, 2013."[2] Akbar also alleged that Amir conspired with their brother Asghar to deprive Akbar of his interest in Rumi Group and that "[o]n or about June 24, 2013, Asghar and [Rumi Group] purported to declare Plaintiff's membership interest in the LLC to be forfeited." On the conspiracy claim Akbar also sought prejudgment interest dating from June 24, 2013.

Amir filed a demur, which the trial court sustained. The court ruled that Akbar's contract claim was barred by the two-year statute of limitations for oral contracts under Code of Civil Procedure section 339. It recognized that the contract claim was based on Amir's failure to repay the loan, not his failure to service the home equity lines. However, it found that the claim for failure to repay the loan must have accrued by June 24, 2013 because the amended complaint alleged that Akbar was seeking interest from that date. Although Akbar objected that he had included this allegation by accident and had intended to seek prejudgment interest from 2013 only on the conspiracy claim, the trial court relied on the face of the pleading in applying the statute of limitations. The trial court then sustained the demur to the conspiracy

---

[2] Akbar also alleged that he sued Mahin in a separate action for failing to repay the loan to her and that in 2019 he was awarded over $150,000 in damages for breach of the same contract as at issue here.

claim on the ground that Akbar had not alleged any underlying cause of action. However, it granted Akbar leave to amend both claims.

**B.**

In February 2020, Akbar filed a second amended complaint, the now operative pleading. In it, Akbar continued to claim breach of contract, but added a breach of fiduciary duty claim in place of the prior conspiracy claim.

With respect to the contract claim, the second amended complaint largely repeated the allegations in the amended complaint. However, there were some material changes. First, the second amended complaint expressly stated that the claim was based on Amir's failure to repay the loan rather than his failure to make service payments: "It is not contended that Defendant breached his promise to contribute to the servicing the HELOCs [home equity lines of credit]; rather, it is contended that he breached his promise to repay the money loaned to him." Second, the second amended complaint alleged that in 2015 Amir informed Akbar that he intended to repay the loan but could not do so at that time. Third, the second amended complaint did not allege that Amir repudiated the contract, instead alleging that Amir "has failed and refused, and continues to fail and refuse, to pay back the full loan amount or any part thereof." Fourth, rather than seeking prejudgment interest from 2013, it sought prejudgment interest "as allowed by law."

Amir once again demurred. In response, Akbar withdrew the fiduciary duty claim, and the trial court overruled the demur with respect to the contract claim. Among other things, the court rejected Amir's arguments that the second amended complaint was a sham pleading because it omitted the prior complaint's allegation concerning pre-judgment interest.

**C.**

The case subsequently went to trial, which the trial court bifurcated so it could resolve Amir's statute of limitations and statute of frauds defenses before reaching

4

Akbar's contract claim. Because Amir had the burden of proof on these defenses, he presented his evidence first, calling two witnesses: Akbar and Asghar. (Amir chose not to testify himself.)

## 1. The Witnesses

Akbar testified that he loaned money to Amir and Mahin under an oral agreement. According to Akbar, one term of that agreement was that Amir and Mahin would repay the funds lent to them when Rumi Group sold the property it was developing or, alternatively, when Akbar demanded that the loan be repaid. Another term was that Akbar, Amir, and Mahin each would pay their proportionate share of the payments needed to service the home equity lines. Akbar testified that he would not have made loans to Amir and Mahin had they not agreed to make their share of the service payments.

Akbar testified as well that Amir eventually stopped making service payments. After learning of this from Mahin (who handled the payments), Akbar confronted Amir and asked why he had stopped making the service payments. In response, Amir smiled and said that "Oskar [Asghar] told me not to pay." Akbar last sought to obtain service payments from Amir in March 2011.

Akbar also testified, however, that he did not demand that Amir repay the loan until sometime in 2014. That same year, Amir asked for power of attorney of over an asset of Akbar's in Iran, where Amir was about to travel. Akbar refused, saying that he could not trust Amir with a power of attorney when he had taken money from Akbar without repaying it. According to Akbar, Amir responded, "I want to repay you but I can't right now . . . ."

After Akbar testified, Amir called Asghar to the stand. Asghar confirmed that he told Amir in 2009 to stop making service payments and testified that Amir told him that he stopped doing so at that time. After Amir rested, Akbar briefly took the stand on his own behalf before resting as well.

5

## 2. The Argument

After the evidence was presented, Amir argued that the statute of limitations, which for oral contracts is only two years, barred Akbar's claim because it began to run no later than March 2011, more than four years before the case was filed, when Akbar last requested that Amir make service payments. Although Akbar's claim is based on failure to repay the loan rather than failure to make service payments, Amir argued that the breach of the obligation to make the service payments was not waivable because his agreement with Akbar was "entire" and not severable. In the alternative, Amir argued, because the contract did not specify when Akbar would demand repayment of the loan, Akbar was required to demand repayment within a reasonable time period, which was determined by the two-year statute of limitations, and the statute of limitations therefore began to run in 2008, two years after the loan was made, and expired in 2010.

## 3. The Trial Court's Ruling and the Judgment

After rejecting the statute of frauds defense, the trial court ruled that the statute of limitations barred Amir's contract claim. The court saw the key issues as whether a material breach had occurred and when Akbar learned of the breach. It ruled that the promise to make service payments on the home equity lines was a "material term" of the contract, that Akbar learned Amir had stopped making payments no later than 2011, and therefore the statute of limitations had expired by the time that Akbar filed suit in November 2015.

Although Akbar subsequently requested a statement of decision, the trial court denied the request because it was not timely made. On April 13, 2022, the trial court entered a judgment that made no specific factual findings but simply held that Akbar's breach of contract claim was "barred by the applicable statute of limitations." Afterwards, Akbar filed a timely notice of appeal.

6

## II. DISCUSSION

Because Akbar did not make a timely request for a statement of decision, he bears a heavy burden on appeal.  Under the doctrine of implied findings, "in the absence of a statement of decision, an appellate court will presume that the trial court made all factual findings necessary to support the judgment for which substantial evidence exists in the record." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267, fn. omitted.)  This is true even where, as here, the trial court has offered a rationale orally.  While "a court's oral comments may be valuable in illustrating the trial judge's theory" (*id*.), the ensuing judgment may not be overturned based on an error in those comments because the trial court retains authority to alter its factual findings and legal conclusions, and absent a statement of decision or contrary indication in the judgment, "the appellate court will assume that, during the period before rendition of judgment, the trial court realized any error and corrected it. [Citation.]" (*Id*. at p. 268.)

Akbar  has satisfied his burden.  As Akbar points out, the trial court's stated rationale for ruling that the statute of limitations began to run by 2011 does not comport with California contract law, and while Amir proposes alternative rationales the trial court might have adopted, none can withstand scrutiny.  As the statute of limitations is an affirmative defense on which the defendant has the burden of proving all essential elements (see, e.g., *Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 945 (*Pollock*)), the trial court's ruling that the statute of limitations bars Akbar's contract claim cannot be upheld.

### A.

We begin with the trial court's stated rationale.  The court ruled that the two-year statute of limitations for claims based on oral contracts began running no later than 2011, and thus expired before Akbar filed suit in 2015, because by that time Amir had materially breached his contract with Akbar by failing to make service payments

7

on the home equity lines of credit. As Akbar's claim is for breach of the duty to repay the loan, not the duty to make service payments, the trial court's rationale implicitly assumes that the breach of one term of a contract, if material, starts the statute of limitations running on claims for violating other, as yet unbreached, terms. That assumption is incorrect.

For more than a century, California courts have recognized what has become known as the "rule of delayed commencement." (*Eloquence Corp. v. Home Consignment Center* (2020) 49 Cal.App.5th 655, 662 (*Eloquence*).) Under this rule, "where the defendant, obligated to perform over a period of time, is guilty of material breach, the plaintiff may waive it and stand on the contract until time for final performance." (*Ibid.*, citing *Israelsky v. Title Ins. Co*. (1989) 212 CalApp.3d 611, 618 (*Israelsky*).)

The Supreme Court has recognized the rule of delayed commencement since at least 1900. In *Richter v. Union Land & Stock Co.* (1900) 129 Cal. 367 (*Richter*), the plaintiff sued for breach of a contract requiring the defendant, first, to construct a water distribution system with canals and ditches and, second, to annually deliver water through that system for irrigation. (*Id*. at pp. 370-371.) When the plaintiff sued for breach of the duty to make the water deliveries, the defendant argued that the statute of limitations barred the claim because it earlier had breached its duty to construct the water distribution system. (*Id*. at pp. 371, 375.) The Supreme Court disagreed. It ruled that "[t]he plaintiff was not bound to treat the contract as abandoned on the first breach of it, or on any particular breach, but had his election to rely upon it," and therefore the statute of limitations "could not begin to run until he made his election to rely no longer upon the contract, and to sue for the money paid to the defendant under it. [Citation]." (*Id*. at p. 375.)

California courts have reaffirmed and followed *Richter*'s ruling. (See, e.g., *Romano v. Rockwell Internat., Inc*. (1996) 14 Cal.4th 479, 489 ["[W]hether the breach

8

is anticipatory or not, when there are ongoing contractual obligations, the plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract."]; *Union Sugar Co. v. Hollister Estate Co*. (1935) 3 Cal.2d 740, 746 ["Respondent was not bound to treat the contract as abandoned on the first breach of it or any particular breach, but had his election to still rely on it, and the statute of limitations could not begin to run until he had made his election," citing *Richter* and *Coulter v. Sausalito Bay Water Co*. (1932) 122 Cal.App. 480]; see also *Eloquence*, *supra*, 49 Cal.App.5th at pp. 662-663 [citing Court of Appeal decisions applying the rule of delayed commencement]; *Israelsky*, *supra*, 212 Cal.App.3d at pp. 617-619 [citing additional decisions applying the rule].)  As a consequence, "[w]here the defendant, obligated to perform over a period of time, is guilty of a material breach, the plaintiff may waive it," and the statute of limitations "ought not to begin running until the date when the last performance is due."  (3 Witkin, Cal. Proc. (6th ed. 2022) Actions, § 575, pp. 700-701.)

Thus, Akbar's claim against Amir for breach of the duty to repay his loan did not accrue, and the statute of limitations did not begin to run, when Amir materially breached the separate contractual duty to make service payments.

### B.

In his briefing in this court, Amir advances a number of arguments in support of the trial court's ruling.  We do not find any of them persuasive.

For example, Amir argues that the statute of limitations began to run on his failure to make service payments because that failure was a "total breach."  Total breach is a concept related, but not identical, to material breach: while a material breach "excuses further performance by the innocent party" (*De Burgh v. De Burgh* (1952) 39 Cal.2d 858, 863), a total breach allows an injured party to sue for "all [its] damages, past and prospective."  (*Coughlin v. Blair* (1953) 41 Cal.2d 587, 598

9

(*Coughlin*); see also Rest.2d Contracts, § 236(1) ["A claim for . . . total breach is one for damages based on all of the injured party's remaining rights to performance."].) The concept of total breach, however, extends beyond material breach: while a material breach generally gives rise to a claim for total breach (Rest.2d Contracts, § 243(1), a non-material breach accompanied or followed by a repudiation also may give rise to a claim for total breach (*id*. § 243(2).) Indeed, because the term "total breach" is frequently misunderstood, the American Law Institute now refers to "damages for material breach or repudiation," rather than damages for "total breach." (Rest.3d Restitution, § 37, com. a.)

It is unclear whether total breach may be claimed where, as here, the injured party has fully performed, and the opposing party's duties have become unconditional and unilateral. (See *Coughlin*, *supra*, 41 Cal.2d at p. 599; *Gold Mining & Water Co. v. Swinerton* (1943) 23 Cal.2d 19, 29 (*Gold Mining & Water Co.*).) It is not necessary to resolve this issue: even if Akbar could have sued for total rather than partial breach based on Amir's refusal to make service payments, he would not have been required to do so. To the contrary, the Supreme Court has long recognized that "even if a breach is total, the injured party may treat it as partial, unless the wrongdoer has repudiated the contract."[3] (*Coughlin*, *supra*, at pp. 598-599, citing *Fresno Canal & Irrigation Co. v. Perrin* (1915) 170 Cal. 411, 415 & Rest., Contracts, § 317(2).)

Amir also contends that the statute of limitations began running when Amir breached his duty to make service payments because his contract with Akbar is an "entire," indivisible" and "inseverable" contract. The concepts of "entire," "indivisible, and "inseverable" contracts impact several issues. For example, severability affects enforceability: if a contract is inseverable, and one term of the contract is unconscionable or otherwise unenforceable, the whole contract is

---

[3] The next section addresses whether there was a repudiation.

10

unenforceable. (See, e.g., *Armendariz v. Foundation Health Psychcare Serv., Inc.* (2000) 24 Cal.4th 83, 121-127.) Divisibility affects the scope of rescission: if a contract is indivisible, a party may not rescind part of the contract but must instead rescind the contract as a whole or not at all. (See, e.g., *Hayutin v. Weintraub* (1962) 207 Cal.App.2d 497, 509-511.) Whether a contract is entire affects the materiality of a breach: if a contract is entire, breach of one portion of the contract may be a material breach and excuse performance of duties in other portions of the contract. (See, e.g., *World Sav. & Loan Assn. v. Kurtz Co.* (1960) 183 Cal.App.2d 319, 321, 327-328.) And where a contract is divisible and has severable parts, claims for breach will accrue, and the statute of limitations will begin to run, as each part is breached. (See, e.g., *Armstrong Petroleum Corp v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1388-1389.)

It does not follow, however, that when a contract is not divisible but is instead entire, indivisible, or inseverable, breach of one part of the contract starts the statute of limitations running on claims for breach of other parts. Amir fails to offer any reason why there should be a special rule prohibiting the injured party from electing whether to treat a breach as partial or total for contracts that are entire, indivisible, or inseverable. Nor do any of the cases that he cites suggest such a rule. To the contrary, the one decision cited by Amir that discusses (albeit briefly) how the statute of limitations applies when "the thing to be accomplished by the contract is an entirety," applies the ordinary rules for partial and total breach. (*Gold Mining & Water Co.*, *supra*, 23 Cal.2d at p. 29; see *id.* at p. 30.)

Thus, none of the concepts invoked by Amir supports the trial court's ruling.

## C.

Amir also contends that Akbar was precluded from electing to continue the loan contract because Amir's breach of his duty to make service payments was accompanied by a repudiation of the contract. This argument has a substantial legal

11

basis. As Amir points out, *Fox v. Dehn* (1974) 42 Cal.App.3d 165, held that the statute of limitations begins to run on claims for any unperformed duties when there is a "partial breach followed by a repudiation." (*Id*. at p. 172; see *id*. at p. 173.) While this decision is nearly 50 years old, it is consistent with the Restatement (see Rest., Contracts, § 317(2)), and no subsequent decisions appear to have challenged it. Nonetheless, Amir's repudiation argument fails because it lacks any factual basis: Amir did not assert, much less prove, any repudiation.

Indeed, Amir does not appear to have argued in the trial court that he repudiated the contract. Although Amir asserted in an affirmative defense that the contract had been "timely canceled and/or repudiated," in demurring to the second amended complaint he denied that there had been any repudiation. Even more important, Amir did not assert a repudiation in his trial brief or in his argument at trial. Indeed, the word "repudiation" does not appear in the trial transcript. Because the issue of repudiation was not raised at trial, Akbar did not have the opportunity to present any evidence concerning repudiation, and the trial court's ruling cannot be upheld based a finding, implied or otherwise, that there was a repudiation. (See, e.g., *Lein v. Parker* (1957) 49 Cal.2d 397, 401; *14589 Moorpark Homeowners Assn. v. VRT Corp*. (1998) 63 Cal.App.4th 1396, 1403, fn. 1.)

In any event, Amir failed to present substantial evidence of repudiation. A repudiation, whether anticipatory or following a breach, "must consist of a present, positive unequivocal refusal to perform the contract." (*Gold Mining & Water Co*., *supra*, 23 Cal.2d at p. 28; see also *Taylor v. Johnston* (1975) 15 Cal.3d 130, 137 ["An express repudiation is a clear, positive, unequivocal refusal to perform."].) There is no evidence here of an unequivocal refusal to perform the contract as a whole. In his brief on appeal, Amir points to Akbar's testimony that, when Akbar asked Amir why he had stopped making the service payments, Amir answered that "Oskar [Asghar] told me not to pay" while "smiling." Amir, however, does not attempt to explain how

12

this enigmatic response constitutes an unequivocal refusal to perform. Even more important, Akbar testified without contradiction that in 2014, far from refusing ever to repay the loan, Amir said "I want to repay you but I can't right now." Thus, even if Amir had properly raised the issue of repudiation, no "present, positive unequivocal refusal to perform" could be found on this record. (*Gold Mining & Water Co.*, at p. 28.)

### D.

In the alternative, Amir argues that the statute of limitations expired in 2010 because Akbar should have demanded repayment of the loan no later than 2008. This argument is based on Akbar's testimony that Amir agreed to repay the loan not only when the property developed by Rumi Group was sold, but also upon demand from Akbar. According to Amir, because the agreement does not specify a time, Akbar was required to demand repayment of the loan within a reasonable time period, and that period is presumptively set by the statute of limitations, which here is two years. This argument fails for a simple reason: it would have been patently *un*reasonable for Akbar to demand repayment in only two years.

Akbar loaned money to Amir in 2006 to enable Amir to continue participating in Rumi Group's development of a commercial building. In 2006, Rumi Group needed additional capital contributions to make an improvement for a large tenant, but Amir, like Akbar and Mahin, lacked the funds needed for his contribution. So, Akbar took out home equity lines on two properties to generate the funds and loaned some of this money to Amir to enable him to make his capital contribution, with the understanding that, unless Akbar demanded repayment, the loan would be repaid when the building under development was finished and sold. Rumi Group, however, was expected to take some years to finish and then sell the building. As a consequence, if Akbar had been required to demand repayment of the loan within two years, Amir

13

would have been forced to repay the loan before the property in question could be sold, thereby rendering meaningless the understanding that, absent a demand, he would pay the loan from the sale's proceeds. Indeed, requiring Amir to repay the loan before Rumi Group could sell the building would have substantially, if not entirely, undermined the loan's goal of allowing Amir to continue participating in Rumi Group even though he lacked the funds needed for capital contributions. Plainly, a time period so short that it renders a term of the agreement meaningless and undermines its goal is unreasonable.

We need not consider whether repayment should have been demanded sometime after 2008 because the statute of limitations is an affirmative defense on which Amir bears the burden of proof (see, e.g., *Pollock*, *supra*, 11 Cal.5th at p. 945), and Amir has not argued either here or before the trial court for a different time period.

### III. DISPOSITION

The trial court's ruling that the statute of limitations bars Akbar's contract claim is reversed, the judgment is vacated, and this matter is remanded for further proceedings. Akbar shall recover his appellate costs.

14

_____
BROMBERG, J.

WE CONCUR:

_____
GROVER, ACTING P.J.

_____
DANNER, J.

*Kalbali v. Kalbali*
H050089